James EISCHEID, Plaintiff,

v.

DOVER CONSTRUCTION, INC., Defendant,

and

Dover Construction, Inc., Third–Party Plaintiff,

v.

Woods Masonry, Inc., Third–Party Defendant and Third–Party Plaintiff,

v.

DeLoss Construction, Inc., Third–Party Defendant.

No. C 00–4100–MWB.

United States District Court, N.D. Iowa, Western Division.

Aug. 25, 2003.

N. Richard Willia, Willia, Stahle & Andreasen, Sioux City, IA, for James Eischeid.

John C. Gray, Heidman, Redmond, Fredregill, Patterson Plaza Dykstra & Prahl, Sioux City, IA, Paul D. Lundberg, Lundberg Law Firm, Sioux City, IA, for Dover Construction Inc.

Dean F. Suing, Todd W. Weidemann, Omaha, NE, for Otis Koglin Wilson Architects Inc. and James Eischeid.

Daniel L. Hartnett, Crary–Huff–Inkster–Hecht–Sheehan–Ringenberg–Hartnett–Storm, Matthew T. E. Early, Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs, et al., Sioux City, IA, for Woods Masonry Inc.

Stephen F. Avery, Cornwall Avery Bjornstad Scott, Spencer, IA, for DeLoss Construction Inc.

## EXPEDITED MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTIONS TO EXTEND DISPOSITIVE MOTION DEADLINE, FOR SUMMARY JUDGMENT, TO SEVER, AND TO INTERVENE

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND ........................................ 452

II. LEGAL ANALYSIS ................................................... 453
 A. Motion To Extend Dispositive Motion Deadline ...................... 453
 1. Arguments of the parties ....................................... 453
 2. Analysis : ..................................................... 454
 B. Motion For Summary Judgment .................................... 456
 1. Arguments of the parties ....................................... 456
 2. Analysis ...................................................... 457
 a. Standards for summary judgment ............................ 457
 b. Factual background ........................................ 458
 c. Theories of liability ........................................ 459
 i. "Control of the job" liability .............................. 460
 ii. "Contractual" liability .................................. 463
 C. Motions To Sever And To Intervene ............................... 465
 1. Arguments of the parties ....................................... 465
 2. Analysis ...................................................... 465
 a. Bifurcation or severance ................................... 465
 b. Intervention .............................................. 467

III. CONCLUSION ..................................................... 468

In this lawsuit, plaintiff James Eischeid asserts claims arising from an accident at a construction site on March 17, 1999. Eis-

cheid was working at the site as an employee of Woods Masonry, Inc., which was, in turn, a subcontractor for masonry work on the construction project for the general contractor, Dover Construction, Inc. Apparently because the construction project was behind schedule, Dover had also hired DeLoss Construction, Inc., to grout masonry walls as Woods Masonry completed the block work. Eischeid was seriously injured when an unbraced, ungrouted wall under construction on the project collapsed, apparently under the force of gusty winds. Following this court's June 2, 2003, ruling on motions for summary judgment regarding claims by and against Woods Masonry, the claims remaining in this action are Eischeid's "direct" negligence action against defendant Dover, and the third-party indemnity claims by and between Dover, Woods Masonry, and DeLoss. Trial in this matter is set to begin on September 8, 2003. However, this matter comes before the court on four motions filed by Eischeid on July 29, 2003, which, if granted, would radically alter the issues and procedures for trial.

## I. PROCEDURAL BACKGROUND

The four motions filed by Eischeid on July 29, 2003, are both "substantive" and "procedural" in nature. In light of the short time remaining before trial, the court entered an order on August 1, 2003, accelerating the deadline for resistances to Eischeid's motions to August 11, 2003, and the deadline for any reply from Eischeid to August 15, 2003. The court also set oral arguments on the pending motions for August 21, 2003. The motions now before the court,[1] and the parties' various responses, are as follows:

The first motion now before the court—logically, if not by docket number—is Eischeid's Motion For Extension Of Dispositive Motion Deadline (docket no. 106), in which he seeks an extension of the dispositive motion deadline from May 2, 2003, to July 29, 2003, so that his motion for summary judgment on the liability of defendant Dover can be considered by the court before trial. Dover resisted this motion on August 4, 2003.

Third-party defendant Woods Masonry also filed a response to this motion, on August 11, 2003, stating that it neither resists nor joins in Eischeid's request. Eischeid filed a reply to Dover's resistance on August 15, 2003.

The second motion now before the court is Eischeid's Motion For Summary Judgment (docket no. 105), which seeks summary judgment on the issue of liability on Eischeid's "direct" negligence claim against Dover. If this motion is granted, it would leave for trial only the damages portion of Eischeid's "direct" claim against Dover. Dover resisted this motion on August 11, 2003, and Eischeid filed a reply on August 15, 2003. Obviously, whether or not the court entertains Eischeid's belated Motion For Summary Judgment depends upon whether or not the court grants his Motion For Extension Of Dispositive Motion Deadline.

The third motion now before the court—again, logically, if not by docket number—is Eischeid's Motion To Sever Third–Party Claims (docket no. 108), and the last motion now before the court is Eischeid's related Motion To Intervene In Third–Party Actions (docket no. 107), in which he seeks leave to intervene in the third-party action if that action is severed for a separate trial. Eischeid asserts that both of these motions are premised primarily on the assumption that the court will grant his motion for summary judgment on Dover's liability. Third-party defendant DeLoss resisted both Eischeid's Motion To Intervene and his Motion To Sever on August 8, 2003, as did defendant Dover on August 11, 2003. However, on August 11, 2003, third-party defendant Woods Masonry joined in Eischeid's Motion To Sever and stated that, assuming the court grants Eischeid's Motion To Sever, Woods Masonry has no objection to Eischeid's intervention in the third-party actions, provided that a jury verdict in excess of one million dollars has been obtained against defendant Dover.

The court did, indeed, hear oral arguments on these four motions on August 21, 2003, as scheduled. At the oral arguments, plaintiff Eischeid was represented by N. Richard Wil-

---

1. Eischeid also filed two motions in limine on August 12 and 13, 2003, respectively. However, the court will dispose of those motions by separate order.

lia and Steven J. Andreasen of Willia, Stahle & Andreason, L.L.P., in Sioux City, Iowa. Defendant and third-party plaintiff Dover Construction, Inc., was represented by Paul D. Lundberg of the Lundberg Law Firm, P.L.C., in Sioux City, Iowa, and John C. Gray of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., also in Sioux City, Iowa. Third-party defendant and third-party plaintiff Woods Masonry, Inc, was represented by Matthew T.E. Early of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser in Sioux City, Iowa. Third-party defendant DeLoss Construction, Inc., was represented by Stephen F. Avery of Cornwall, Avery, Bjornstadt & Scott in Spencer, Iowa.

## II. LEGAL ANALYSIS

The court makes the general observation that the flurry of last-minute or just plain untimely motions now before the court, on substantive as well as procedural issues, which distracts both the court and the parties from trial preparation, is precisely the sort of thing that its Scheduling Order was designed to prevent. Nevertheless, recognizing the possibility that there may be some benefit, in the form of prompt, economical, and coherent presentation of the present matter to jurors, the court will entertain the motions on the merits, at least to the extent that disposition of one motion does not also moot or dispose of the next.

### A. Motion To Extend Dispositive Motion Deadline

#### 1. Arguments of the parties

In support of his motion to extend the dispositive motion deadline from May 2, 2003, to July 29, 2003, Eischeid argues that his motion for summary judgment on Dover's liability is based partly upon depositions taken by the parties during the last week of May, 2003, and partly in response to the court's disposition on June 2, 2003, of the motions for summary judgment regarding claims by and against Woods Masonry. As to the last point, Eischeid argues that the court's June 2, 2003, order resolved on a final basis the status of the respective claims proceeding to trial in this matter and the manner in which they would be decided. In light of the depositions and the court's ruling, Eischeid contends that it is apparent that summary judgment is not only appropriate on Dover's liability, but that judicial economy would be served by allowing Eischeid's cause of action against Dover to proceed to trial only on the issue of damages, while severing the third-party indemnity claims for separate trial. Eischeid also argues that the issues on his motion for summary judgment are straight-forward, so that there will be no undue delay of the trial as presently scheduled.

Although Woods Masonry responded that it neither resisted nor joined in Eischeid's motion to extend the dispositive motion deadline, Dover responded with a resounding "No!" Dover contends that Eischeid's motion for summary judgment was filed well past the dispositive motion deadline of May 2, 2003. Dover also contends that it is inappropriate, when the parties are now engaged in trial preparations, to interrupt those preparations to deal with a belated motion for summary judgment, which the court could not hear or decide until shortly before trial. Moreover, Dover contends that Eischeid offers no adequate explanation for why either the discovery obtained in late May or the court's ruling on summary judgment motions regarding claims by and against Woods Masonry justify such a belated motion. Dover points out that Eischeid waited nearly sixty days after these two events before filing his summary judgment motion and has not explained why such a delay is excusable. Although Dover recognizes the necessity of the order accelerating the schedule for responding to Eischeid's motions, Dover also objects to having to resist Eischeid's motion for summary judgment at the same time that it must resist his motion for extension of the dispositive motion deadline without a demonstration of good cause for extending the dispositive motion deadline.

In reply, Eischeid contends that there is no indication that his motion for summary judgment or the motion to extend the dispositive motion deadline has interrupted Dover's trial preparations, where Dover has not provided Eischeid with any proposed Jury Instructions, has filed no motions in limine, and

only belatedly served a Witness and Exhibit List. He clarifies his contentions that he was unable to file his motion for summary judgment before the May 2, 2003, deadline for the following reasons: depositions necessary to the motion could not be scheduled until late May; transcripts of those depositions were then delayed until late June, because the court reporter who took the depositions was injured in a motor vehicle accident; the court's June 2, 2003, summary judgment ruling, which Eischeid concedes did not provide any facts necessary to his summary judgment motion, nevertheless indicated what issues remained for trial and what procedures would be used to resolve them; and the parties were unsuccessful in attempts to mediate their claims on July 11, 2003. He also contends that good cause for an extension of the dispositive motion deadline exists, because simultaneously with his reply to Dover's resistance to the motion to extend the dispositive motion deadline, he also filed his reply to Dover's resistance to his summary judgment motion, presumably suggesting that the summary judgment motion is ripe for disposition without further delay; his arguments for summary judgment are convincing and compelling; Dover cannot reasonably dispute its liability to him, so that the thrust of Dover's arguments at trial will go to matters of indemnity; Eischeid should not be required to pay the costs of trial on Dover's indemnity claim, so that summary judgment is warranted to prevent prejudice to him; and there will be no prejudice to Dover, because Dover will still be able to litigate the viable issues of damages and indemnity.

### 2. Analysis

As this court has repeatedly observed, " 'The Magistrate's Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.' " *See Swanson v. Van Otterloo,* 177 F.R.D. 645, 646 (N.D.Iowa 1998) (quoting *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985)); *Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 687 (N.D.Iowa 1995) (same); *Widmer–Baum v. Chandler–Halford,* 162 F.R.D. 545, 556 (N.D.Iowa 1995) (same); *Tyler v. Iowa State Trooper Badge No. 297,* 158 F.R.D.

632, 636 (N.D.Iowa 1994) (same); *Rouse v. Farmers State Bank of Jewell, Iowa,* 866 F.Supp. 1191, 1198 (N.D.Iowa 1994) (same); *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 510 (N.D.Iowa 1992) (same). Moreover,

One court has remarked that

> [s]uch orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved. *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 790 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Compagnie Nationale Air France v. Port of New York Authority,* 427 F.2d 951 (2nd Cir.1970); *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987); *Gestetner Corp. v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D.Me.1985).

*Kramer v. The Boeing Co.,* 126 F.R.D. 690, 696 (D.Minn.1989). A scheduling order is an important tool in controlling litigation. *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 510 (S.D.Iowa 1992).... Scheduling orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." [*Gestetner Corp.,* 108 F.R.D. at 141.] The court in *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir.1990), also observed that the flouting of court ordered deadlines causes substantial harm to the judicial system. The court stated:

> [d]elays [in litigation] are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

*Id.* at 792.

*Waitek,* 908 F.Supp. at 687; *accord Rouse,* 866 F.Supp. at 1198–99 (this court has found that adherence to reasonable deadlines is critical to maintaining integrity of court proceedings). It is for these reasons that Rule 16(b) provides that a court's scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." FED. R. CIV. P. 16(b).

 The court is not convinced that the requisite *"good cause"* for extending the dispositive motion deadline has been shown in this case, at least to the extent that Eischeid argues that "good cause" is shown by the fact that he could not have moved for summary judgment sooner. First, Eischeid has offered little or no explanation for much of the delay from May 2, 2003, the deadline for dispositive motions, to July 29, 2003, the date on which he filed his belated motion for summary judgment. Eischeid knew prior to the May 2, 2003, dispositive motion deadline that essential depositions had not yet been taken, and he could reasonably have moved for an extension of the dispositive motion deadline, prior to its expiration, on that basis. Even supposing that the late-May depositions and the court's June 2, 2003, order were critical to his motion for summary judgment, reasonable foresight might have prompted Eischeid to move *in early June* for an extension of the dispositive motion deadline, based on those events and the unexpected delay in obtaining deposition transcripts owing to the court reporter's accident. At the very least, there is an unexplained delay from the end of June, when the transcripts became available, to July 29, 2003, when Eischeid filed his summary judgment motion. The supposed merits of the summary judgment motion do not explain the delay in filing it.

The court also does not agree with Eischeid that the supposed merits of his summary judgment motion otherwise establish "good cause" for extending the deadline. Reasonable scheduling deadlines should apply to *the filing of dispositive motions,* without regard to whether or not the motions are meritorious. Otherwise, every party in every case could argue that it should be excused from following applicable deadlines, because its belated motion is "meritorious," turning the disposition of the motion to extend deadlines into a *de facto* consideration of the merits of the untimely motion.

On the other hand, the court could be persuaded that "good cause" exists for extending a dispositive motion deadline where the proffered dispositive motion presents *legal* issues that the court would inevitably have to decide either prior to or in the course of trial. In those circumstances, a well-founded summary judgment motion might present the most efficient method for addressing the legal issues presented, the fairest opportunity for all parties to be heard on those issues, and, ultimately, make possible a smoother, more coherent, and briefer presentation of the case to a jury. In short, it is the issues raised in the belated motion, not their merit, that may determine whether there is "good cause," despite the untimeliness of the motion, for extending the deadline to consider it. Moreover, where the issues raised in the belated motion must inevitably be addressed by the court either prior to or in the course of trial, the opposing party cannot claim prejudice where consideration of the otherwise untimely motion presenting those issues actually gives the opposing party the opportunity to litigate those issues fully and fairly.

In this case, Eischeid's belated motion for summary judgment is premised, first, on the legal issues of whether or not Dover had certain nondelegable duties, on theories of "premises" or "control of the job" and "contractual" liability, *as well as* the fact questions, or mixed questions of law and fact, regarding breach of such duties. *See, e.g., Kolbe v. State,* 661 N.W.2d 142, 146 (Iowa 2003) (in a negligence action, "[t]he existence of a legal duty is a question of law"). Dover has resisted summary judgment not only on the basis that it breached none of the duties upon which Eischeid relies, but on the basis that it was not subject to any such duties. Thus, certain *legal* issues that the court must inevitably address, either prior to or in course of trial, are presented by Eischeid's belated summary judgment motion. In these limited circumstances, the court concludes that there is "good cause" within the mean-

ing of Rule 16(b) of the Federal Rules of Civil Procedure for extending the dispositive motion deadline to allow the court to consider on the merits Eischeid's otherwise untimely July 29, 2003, motion for summary judgment. Eischeid's motion to extend the dispositive motion deadline will be granted and the court, consequently, turns to consideration of Eischeid's motion for summary judgment.

### B. Motion For Summary Judgment

### 1. Arguments of the parties

In support of his motion for summary judgment on the issue of Dover's liability, Eischeid argues, first, that Dover indisputably was subject to duties to prevent injuries on the job site based upon (1) possession and control of the premises, which Eischeid initially described as "premises liability," and (2) its contract with the owner, Pine Tree Realty, which imposed a duty to provide for the safety of workers, which Eischeid describes as "contractual liability." As to "premises liability," Eischeid originally argued that when, as here, a principal contractor entrusts part of the work to subcontractors, but superintends the entire job, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of work in a way that is unreasonably dangerous to others. He contends that, under the circumstances presented here, no reasonable jury could conclude that Dover did not maintain control over the job site and, thus, owed a duty to Eischeid to provide a reasonably safe workplace. As to "contractual liability," Eischeid argues that it is undisputed that, under its contract with Pine Tree, Dover assumed a nondelegable duty to provide for the safety of persons such as himself, even if Dover delegated the actual work on the project to a subcontractor, such as Woods Masonry. Eischeid contends that it is indisputable that Dover breached these duties by failing to brace the wall adequately, where Dover knew or should have known of the dangerous condition of the wall given the anticipated wind conditions. Eischeid also contends that it is indisputable that Dover's breach of duties proximately caused his injuries and Dover cannot refute his contentions.

Dover does, however, dispute Eischeid's contentions. First, Dover argues that issues of negligence and proximate cause are typically for a jury to decide. Dover then contends that the record generates at least genuine issues of material fact that it was Woods Masonry, not Dover, that failed to comply with safety standards on the Pine Tree job site. Dover argues that a jury could readily find that Woods Masonry's negligence was the sole proximate cause of Eischeid's injuries. As to "premises liability," Dover contends that there are genuine issues of material fact as to whether or not Dover should have expected that workers on the job site would not discover or realize the danger of the unbraced wall in windy conditions, or would fail to protect themselves against it, and whether Dover failed to exercise reasonable care to protect them against the danger. Dover contends that the danger posed by the unbraced wall in this case was "known or obvious," which is an exception to "premises liability" of the possessor to an injured invitee. As to what Dover calls Eischeid's "contractual and vicarious liability theories," Dover contends that the general rule in Iowa is that prime contractors, like Dover, generally are *not* liable for injuries arising out a subcontractor's negligence, in the absence of a contract providing otherwise or the prime contractor's control of the work. In this case, Dover contends that it contracted to be responsible *to the owner of the project* for acts and omissions of Dover's employees, or Dover's subcontractors and their employees. However, Dover contends that there is no provision of the contract under which Dover assumes responsibility or a duty to an employee of a subcontractor injured by his own employer's negligence. Dover also contends that there are genuine issues of material fact as to whether or not it had sufficient control over the premises or the work by Woods Masonry to be held vicariously liable to Eischeid for Woods Masonry's negligence.

In reply, Eischeid clarifies that his argument is that Dover owed a nondelegable duty to Eischeid, because Dover retained control of part of the work at the job site, specifically, bracing and construction of the concrete walls, *or* because Dover contractually agreed to brace the concrete block walls and/or provide for the safety of workers at the site. He

reiterates that it is undisputed that Dover breached these duties and that Dover's breach proximately caused his injuries. However, in his reply, he concedes that he improperly labeled one of his theories "premises liability," when the issue is properly one of "contractor liability," based on "control" of the premises or work site. He concedes that there are genuine issues of material fact on issues related solely to "premises liability" of a possessor of land, specifically, whether Dover took reasonable precautions and whether there was a known and obvious danger. However, as reformulated, Eischeid's argument is that his "contractor liability" claims are based on three exceptions to the general rule that a general contractor is not liable for the acts of an independent contractor: "premises liability," "retained control" or "control of the job," and "contractual obligation." He points out that he need only show that he is entitled to summary judgment on any one of these three theories to establish Dover's liability as a matter of law. He contends that there are no genuine issues of material fact as to Dover's liability under the "contractual obligation" theory, because Dover was subject to a nondelegable duty to maintain the safety of the work place, even if that contractual obligation was to the *owner*, as Dover argues. Eischeid argues that the *duty* is nondelegable, even if the general contractor can delegate *performance* of the duty to a subcontractor, such as Woods Masonry, and the general contractor cannot escape liability based on that delegation. Thus, Eischeid argues that Dover's supposed factual disputes come to nothing. In support of the "retained control" or "control of the job" theory, Eischeid argues that a general contractor is vicariously liable for negligence of a subcontractor where, as here, the general contractor retains sufficient control of the work being performed by the subcontractor. Eischeid also argues that Dover has failed to generate any genuine issues of material fact on the question of whether its breach of duties proximately caused his injuries. Finally, in a new argument, Eischeid argues that he is entitled to summary judgment "in the interest of justice," because he has sustained serious injuries and has incurred substantial costs of litigating his claims, but

Dover has done little or nothing to defend against his claims, which Eischeid argues signals Dover's intent to focus its efforts on its indemnity claims. The injustice, he contends, is that he is bearing the costs of litigating Dover's third-party indemnity claim against Woods Masonry, but that claim is irrelevant to Dover's liability to him.

### 2. Analysis

#### a. Standards for summary judgment

As this court has explained on a number of occasions, applying the standards of Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick*, 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v.*

*Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

The court will apply these standards to Eischeid's motion for summary judgment on the liability portion of his "direct" claim against Dover.

### b. Factual background

The following statement of factual background is not intended to be exhaustive. Rather, it is intended to put in context the factual and legal disputes of the parties.[2]

The parties agree that plaintiff James Eischeid was injured in an accident at a construction site on March 17, 1999. Eischeid was working at the site as an employee of Woods Masonry, which was, in turn, a sub-

contractor for masonry work on the construction project for the general contractor, Dover. Apparently because the construction project was behind schedule, Dover had also hired DeLoss Construction, Inc., to grout masonry walls as Woods Masonry completed the block work. On March 17, 1999, Eischeid was working on top of a scaffolding located next to one of the exterior concrete block walls under construction on the project. He was seriously injured when that unbraced, ungrouted wall collapsed, apparently under the force of gusty winds.

Specifically, the parties agree that the wall that collapsed was not braced in accordance with the contract drawings or OSHA regulations and that Dover's owner would have expected his on-site supervisor, Dave Cozza, to evacuate the job site assuming there were forecasts of winds of 20 to 35 mph with gusts up to 45 mph. Dave Cozza admitted that, given the wind conditions, he would not have allowed workers to work on the wall if he had known that the wall was not braced as required by the contract and OSHA regulations. The parties also agree that a wind advisory had been issued for the area and reported by local Spencer, Iowa, radio stations during the morning hours of March 17, 1999, before work commenced at the job site. The reports included forecasts of winds from 20 to 35 mph, with gusts up to 45 mph. The parties also agree that it was already windy when work started at the job site that morning and that the wind gradually increased throughout the morning up to and after the time when the wall collapsed.

Dover agrees that it was required to execute the work described in the contract documents between Dover and Pine Tree and that it was required to perform that work in accordance with the provisions of AIA document A201–1997. Dover also agrees that it was required to employ a superintendent who was to be in attendance at the project site during performance of work under the contract; that Dover was responsible for initiating, maintaining, and supervising all safe-

---

**2.** In the context of Eischeid's present motion for summary judgment, "the parties" refers only to

Eischeid and Dover.

ty precautions and programs in connection with the performance of the contract; that Dover was required to take precautions for the safety of, and was to provide reasonable protection to prevent injury to, employees on the work site and other persons who might be affected thereby; and that Dover had the authority and responsibility to make decisions concerning stoppage of work or evacuation of the job site owing to dangerous conditions such as weather.

Dover does, however, dispute some of Eischeid's contentions regarding Dover's duties.[3] Specifically, Dover disputes that it was responsible for the acts and omissions of its employees, subcontractors, and their agents and employees, and other persons or entities performing portions of the work for or on behalf of Dover or any of its subcontractors, to the extent that Dover contends that any such duties were *to the owner* of the project, under the terms of the contract, *not to employees of subcontractors.* Dover acknowledges that the contract provided that Dover "shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to ... [e]mployees on the work and other persons who may be affected thereby." *See* Defendant's Appendix at 3, Contract, General Conditions § 10.2.1. However, Dover contends that it took reasonable precautions for the safety of persons on the work site, because the site superintendent daily told representatives of Woods Masonry to brace the walls. Dover also disputes that it was required to brace the wall according to contract or OSHA specifications, because Dover contends that Woods Masonry was responsible for that work under its subcontract with Dover. Dover also disputes Eischeid's contention that Dover was solely responsible for and had control over the construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the contract, or that Dover specifically exercised control and authority over the bracing of the exterior concrete block walls, because Dover contends that Woods Masonry assumed responsibility for bracing the walls

during construction as part of the scope of the work that it agreed to perform under its subcontract with Dover.

Dover also disputes Eischeid's contentions that it breached its duties. Dover denies that it failed to brace the exterior concrete block wall that collapsed, as required by the contract documents and OSHA standards, because it contends that the responsibility for doing so was Woods Masonry's. Dover also disputes Eischeid's contention that it did not prevent persons, including Eischeid, from working on or near the wall on March 17, 1999, when Dover knew or should have known that the condition of the wall and the anticipated winds for that day created a dangerous condition for such persons, because Dover contends that, through its superintendent, it repeatedly warned Woods Masonry to brace the walls, but those warnings were ignored.

### c. Theories of liability

■ To prevail on his "direct" negligence claim against Dover, Eischeid must prove the following: (1) that Dover owed Eischeid a legal duty; (2) Dover breached that duty; (3) the breach was a proximate cause of Eischeid's injuries; and (4) the amount of damages. *See, e.g., Kolbe v. State,* 661 N.W.2d 142, 145–46 (Iowa 2003). In a negligence action, "[t]he existence of a legal duty is a question of law." *Id.* at 146. As noted above, the first issue that must be resolved on Eischeid's motion for summary judgment on the liability portion of his claim against Dover is whether Dover was subject to any legal duty to provide Eischeid with a safe work place—*i.e.,* whether there is any viable "theory of liability" upon which Eischeid can premise his claim.

■ In a companion case, a declaratory judgment action by Woods Masonry's general liability insurer against Dover, this court recognized that, "[u]nder Iowa law, prime contractors, such as Dover, are generally not liable for injuries arising out of a subcontractor's negligence." *State Auto Mut. Ins. Co.*

---

**3.** The court reserves for later discussion the issue of whether or not Dover's disputes are "genuine" or "material."

v. Dover Constr., Inc., 273 F.Supp.2d 1023, 1029–30, 2003 WL 21750954, *6 (N.D.Iowa 2003) (citing cases and RESTATEMENT (SECOND) OF TORTS § 409, which state this general rule). However, this court also recognized that "the Iowa Supreme Court has noted that 'this general rule "is riddled with a number of common-law exceptions that have practically subsumed the rule."'" Id. (quoting Kragel v. Wal–Mart Stores, Inc., 537 N.W.2d 699, 702 (Iowa 1995), in turn quoting Rowley v. Mayor & City Council of Baltimore, 305 Md. 456, 462, 505 A.2d 494, 497 (Md.Ct.App. 1986)). This court concluded that two of the exceptions applicable to Eischeid's claim against Dover are "contractual" liability and "control of the job," each giving rise to a nondelegable duty to take reasonable precautions for employee safety. See id. at 1029–31, 2003 WL 21750954 at *6–*8 (citing Downs v. A & H Constr., Ltd., 481 N.W.2d 520 (Iowa 1992); Farris v. General Growth Dev. Corp., 354 N.W.2d 251 (Iowa Ct.App. 1984); Kragel v. Wal–Mart Stores, Inc., 537 N.W.2d 699 (Iowa 1995); Goebel v. Dean & Assocs., 91 F.Supp.2d 1268 (N.D.Iowa 2000); and REstatement (Second) of Torts § 414). Although the "duty" is nondelegable, performance of that duty may be delegated to another, but such delegation of performance does not excuse the general contractor from liability for non-performance. Id. at 1030–31, 2003 WL 21750954 at *7–*8. The court also now notes that the Iowa Court of Appeals has recognized that a more general "premises liability" exception, based on a "possessor's" control of the land, is also applicable to general contractors. See, e.g., Robinson v. Poured Walls of Iowa, Inc., 553 N.W.2d 873, 875–76 (Iowa 1996) (citing RESTATEMENT (SECOND) OF TORTS § 343). However, Eischeid concedes that there are genuine issues of material fact on such a general "premises liability" theory in this case. Therefore, the theories of liability still in dispute on Eischeid's motion for summary judgment on liability of Dover are "control of the job" liability and "contractual" liability. The court will consider these theories in turn.

*i. "Control of the job" liability.* Eischeid maintains that, while there are genuine issues of material fact on his "premises liabil-

ity" theory, there are no such genuine issues of material fact as to Dover's liability under a "control of the job" theory of "contractor liability." As Eischeid argues, the Iowa Court of Appeals addressed the requirements for liability on this theory in *Farris v. General Growth Dev. Corp.,* 354 N.W.2d 251 (Iowa Ct.App.1984):

The exceptions to the independent contractor rule are contained in Restatement (Second) of Torts sections 410 through 429. Section 414 provides that:

[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Comment (b) to section 414 provides in pertinent part that:

[t]he rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others ...

The duty imposed upon [a] general contractor, to exercise reasonable care to prevent injuries on the job site may be premised upon its possession and control of the premises. We are of the opinion that [the general contractor] was in possession of the premises. Restatement (Second) of Torts section 422 provides that normally an owner of property is liable for injuries caused to others by the unsafe condition of the property as long as he has possession of the land. However, comment (c) provides that an owner is not liable for injuries occurring while the land is turned over to a contractor since "[p]ossession usually is surrendered fully in the case of construction." The logical converse of this provision is that the general contractor acquires possession in such circumstances.

This conclusion is further buttressed by *Lunde [v. Winnebago Indus., Inc.,* 299 N.W.2d 473 (Iowa 1980)], wherein the court held that an owner of property surrenders possession unless his involvement in overseeing the construction is "substantial." *Id.* at 479.

*Farris,* 354 N.W.2d at 253–54. Likewise here, RESTATEMENT (SECOND) OF TORTS § 414 provides the basis for the duty on the part of Dover, as the general contractor, upon which Eischeid relies.

Turning to the question of whether or not a general contractor has retained sufficient control of the performance of construction at the work site to be liable within the meaning of RESTATEMENT (SECOND) OF TORTS § 414, the Iowa Court of Appeals in *Farris* considered the following:

> Normally when a general contractor has a supervisor on the site, it will be able to exercise control over the premises. Clearly this was the case here. GGDC's supervisor, Dick Cable, was in charge of coordinating all subcontractors and inspecting the work as it was completed on this job. Cable had a trailer on the job site and was present on the construction site daily. Farris's testimony indicated that Cable, on several occasions, directed Gibson's workers on what to do and how to do it. Farris stated that Cable would show Gibson's workers how to get ice off the rafters. Another worker, Owens, stated that he voiced his complaints to Cable about the safety of the job and the fact that there were no railings on the open-sided deck. Wilkins, a carpenter on the job site, testified that on two occasions Cable directly instructed him. Another carpenter, Scoles, related that on one occasion Cable gave him direct work instructions. He further testified that he followed those instructions because he considered Cable to be the boss on this job. John Brandt, a carpenter for Gibson, testified that Cable gave him and other Gibson carpenters direct instructions on what to do, and also Cable would get involved because "[h]e had the final word."

> Since GGDC was in possession of, and had control over the premises, the trial court did not err by instructing the jury that GGDC owed Farris a duty to provide a reasonably safe place to work.

*Farris,* 354 N.W.2d at 254.

■ Eischeid has marshaled evidence similar to that presented in *Farris* suggesting that Dover exercised sufficient control over the work site and performance of work to be subject to a nondelegable duty to provide Eischeid with a reasonably safe work place. *See Hartnagel,* 953 F.2d at 395 (the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue"). Specifically, he points out that Dover had a supervisor on the site who exercised considerable control, and final authority, over the manner in which subcontractors performed their work. *See Farris,* 354 N.W.2d at 254. The question is whether Dover has met its burden to identify specific evidence that generates genuine issues of material fact that its "control" was insufficient. *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In an attempt to meet its burden, Dover relies on evidence that Woods Masonry became "primarily" responsible for safety and bracing of walls under construction, as the result of its subcontract with Dover. However, Dover's reliance on this evidence demonstrates Dover's misunderstanding of the difference between delegable performance and a nondelegable duty to provide a reasonably safe place to work. None of the evidence cited by Dover generates any jury question on whether Dover, through its on-site supervisor, had final say on the performance of work on the site or otherwise exercised final control over matters such as authority to evacuate the work site owing to dangerous weather conditions or dangerous failure of a subcontractor to perform bracing of walls. At most, the evidence on which Dover relies raises only potential jury questions on whether Dover adequately *exercised* its right of final control.

Therefore, as a matter of law, Dover was subject to a nondelegable duty to provide a reasonably safe work place on the basis of its "control of the job."

 This is not to say that Eischeid is necessarily entitled to summary judgment on the liability portion of his "direct" negligence claim against Dover. Rather, Eischeid must also demonstrate that there is no genuine issue of material fact that Dover breached its nondelegable duty. *See, e.g., Kolbe,* 661 N.W.2d at 146 (breach of duty is the second element of a negligence cause of action). That duty, again, is a duty "to exercise *reasonable* care," for example, "to prevent the subcontractors from doing even details of the work in a way unreasonably dangerous to others." RESTATEMENT (SECOND) OF TORTS § 414 and cmt. (b) (emphasis added); *Farris,* 354 N.W.2d at 253–54. There can be little doubt that the manner in which Woods Masonry performed its construction of the concrete block walls was "unreasonably dangerous to others," because it is undisputed that Woods Masonry did not brace the walls in compliance with either contract requirements or OSHA regulations. The question is whether Dover "exercise[d] *reasonable* care" to prevent such malperformance—*i.e.,* the question is Dover's *own* negligence.

The court concludes that Dover has failed to generate a genuine issue of material fact that it exercised such reasonable care. This is so, notwithstanding Dover's contention that its on-site superintendent testified that Dover insisted that masonry walls be braced during construction; that prior to March 17, 1999, he told representatives of Woods Masonry that the walls had to be braced and that they had to use lumber uprights to keep the walls safe; that it became an "everyday" procedure to tell Woods Masonry representatives to brace the walls, and that he was "really persistent" about it, but Mr. Woods's response to such persistent reminders was, "I know what I'm doing, don't worry about it, I know what I'm doing. I've done this before and will take care of it"; and that he complained to Dover's project manager that Woods Masonry was being nonchalant about bracing the walls, and that he believes that the project manager sent Woods Masonry a

letter regarding the issue. The site superintendent also testified that he had the authority to evacuate the job site owing to dangerous weather conditions, but that he relied on the expertise of subcontractors, such as Woods Masonry, to tell him when wind conditions became too dangerous.

Taking Dover's assertions as true, however, they are a long way from demonstrating any genuine inference that Dover exercised reasonable care to prevent Woods Masonry from constructing masonry walls in a dangerous manner. To the contrary, the only reasonable inferences to be drawn from this evidence and evidence upon which Eischeid relies is that Dover knew that bracing was required by the contract and OSHA regulations; Dover was aware of the danger of unbraced walls in windy conditions; Dover was aware that Woods Masonry persistently failed to perform adequate bracing; Dover knew that repeated warnings had failed to improve Woods Masonry's compliance with the bracing requirements of the contract and OSHA standards; and Dover knew that the weather conditions were potentially dangerous for unbraced walls on March 17, 1999, but *nevertheless* did nothing to determine whether the walls had been adequately braced that day, to see that they were braced before work continued, or to evacuate the work site to prevent workers from being injured by the collapse of unbraced walls under windy conditions. Therefore, there is no genuine issue of material fact that Dover breached its duty to control the job site in such a way as to provide a reasonably safe work place. Specifically, there is no genuine issue of material fact that Dover failed "to exercise *reasonable* care," for example, "to prevent [Woods Masonry] from doing even details of the work in a way unreasonably dangerous to others." RESTATEMENT (SECOND) OF TORTS § 414 and cmt. (b) (emphasis added); *Farris,* 354 N.W.2d at 253–54.

 Next, as Dover correctly argues, to establish Dover's liability, Eischeid must also establish that Dover's breach of its duty proximately caused his injuries, *see Kolbe,* 661 N.W.2d at 145 (third element of a negligence cause of action is that the breach of duty proximately caused the plaintiff's inju-

ries), and that the issue of proximate cause must be determined separately from the issue of negligence or breach of duty. *See, e.g., Scoggins v. Wal–Mart Stores, Inc.,* 560 N.W.2d 564, 567 (Iowa 1997). As the Iowa Supreme Court explained in *Scoggins,* " '[U]nder any definition of causation, this element has two components: (1) the defendant's conduct must have *in fact caused* the plaintiff's damages (generally a factual inquiry) and (2) the policy of the law must require the defendant to be *legally responsible* for the injury (generally a legal question).' " *Id.* (quoting *Gerst v. Marshall,* 549 N.W.2d at 810, 815 (Iowa 1996), with emphasis in the original). The defendant's conduct "in fact caused" the plaintiff's damages, *if* (1) "the harm would not have occurred *but for* the negligence of the defendant," and (2) "the negligence of the defendant was a substantial factor in bringing about the harm." *Id.* (emphasis in the original). The "legal responsibility" prong also requires that (1) the defendant's conduct was a "substantial factor" in bringing about the harm, and in addition, that (2) "there is no other rule of law relieving the actor of liability because of the manner in which his negligence resulted in the harm." *Id.*

■■■ These requirements are, as a matter of law, satisfied here, because Dover has failed to generate any genuine issue of material fact to the contrary. As to "causation in fact," *id.* (first component of proximate cause), there is no genuine issue of material fact that "but for" Dover's negligent exercise of control of the job site, either Woods Masonry or Dover itself would have braced the unfinished masonry wall, preventing its collapse and Eischeid's injury, or Dover would have evacuated the work site owing to high winds, preventing Eischeid's injury. Similarly, there is no genuine issue of material fact that Dover's negligence was a "substantial factor" in bringing about the harm to Eischeid. This is so, because in terms of "proximity and foreseeability of the harm flowing from [Dover's] conduct," *see id.* (defining the "substantial factor" test in terms of "proximity and foreseeability"), it is beyond dispute

that it was foreseeable to Dover that failure to brace masonry walls while under construction, generally, and specifically in windy conditions, was likely to result in the collapse of those walls and possible injury to anyone working on or near those walls at the time—indeed, Dover indisputably knew precisely that bracing the walls was required, not just by the terms of the contract, but by OSHA safety regulations. Dover appears to argue, however, that Woods Masonry's failure to brace the walls somehow breaks the causation chain as a matter of "causation in fact" or "legal responsibility," such that a reasonable jury could find that Woods Masonry's negligence was the sole proximate cause of the injuries to Eischeid. This argument again mistakes Woods Masonry's responsibility to perform bracing, as a task delegated to it, and Dover's nondelegable duty to exercise reasonable care to prevent work from being done in a manner that was unreasonably dangerous to others. Under the circumstances of this case, in light of Dover's nondelegable duty, as between Eischeid and Dover, there is no "other rule of law relieving [Dover] of liability because of the manner in which [its] negligence resulted in the harm," and Dover is legally responsible for Eischeid's injuries. *See id.*[4] Therefore, Eischeid is entitled *to summary judgment on the* liability portion of his "direct" negligence cause of action against Dover, on the basis of Dover's "control of the job."

■■■ *ii. "Contractual" liability.* In the alternative, the court will also consider Eischeid's contention that he is entitled to summary judgment on the liability portion of his "direct" negligence cause of action against Dover on the basis of "contractual liability." Again, this court has recognized that "contractual" liability is an exception to the general rule that general contractors are not liable for injuries arising out of a subcontractor's negligence. *See State Auto Mut. Ins. Co.,* 273 F.Supp.2d at 1029–31, 2003 WL 21750954 at *6–*8. Moreover, in *Farris,* the Iowa Court of Appeals recognized that "the court in *Giarratano v. Weitz Company,* 259 Iowa 1292, 147 N.W.2d 824 (1967), stated

---

**4.** In its indemnity action against Woods Masonry, of course, Dover is entitled to argue that

Woods Masonry's negligence was the sole proximate cause of Eischeid's injury.

**464**

that when a '[general contractor] assume[s] a duty under its contract with [the owner] for the safety of the workmen ... this responsibility cannot be delegated even though [the general contractor] had employed an independent contractor to do the actual work.'" *Farris*, 354 N.W.2d at 254–55 (quoting *Giarratano*, 259 Iowa at 1305, 147 N.W.2d at 832). "Therefore," the court explained, "if we find that [a general contractor] assumed a duty under its contract with [the owner] for the safety of the workmen, such responsibility cannot be delegated to [a subcontractor]." *Id.* at 255. As the court in *Farris* also explained,

> The rule is well settled in Iowa that where a contract imposes a duty upon a person, the neglect of that duty is a tort, and an action ex delicto will lie. *Duke v. Clark*, 267 N.W.2d 63, 68 (Iowa 1978). It is clear [in the case before the court] that the contract between [the general contractor] and [the owner] imposed a duty upon [the general contractor] to provide reasonable precautions for employee safety. The tort sued upon however, is the neglect of a duty undertaken in a contract to which [the injured plaintiff] was not a party. Nevertheless, we find that [the injured plaintiff] was a member of a class for whose benefit the contract was made. The doctrine of third-party beneficiaries applies, and plaintiffs can maintain an action for [the general contractor's] failure to perform its contractual duty. *Giarratano*, 259 Iowa at 1308–09, 147 N.W.2d at 833.

*Farris*, 354 N.W.2d at 255. Thus, not only can a contract between the general contractor and the owner create a nondelegable duty to provide reasonable precautions for employee safety, an injured employee who is in the class of persons that the contractual duty was intended to protect can sue for breach of that duty as a third-party beneficiary of the contract. *Id.*

The circumstance contemplated in *Farris* is precisely the circumstance that, as a matter of law, obtains here: Dover had, indeed, assumed a duty under its contract with Pine Tree for the safety of workmen, and that responsibility cannot be delegated to Woods Masonry, or any other subcontrac-

tor. *Id.* This is so, because, as Dover concedes, the contract between Dover and Pine Tree provided that Dover "shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to ... [e]mployees on the work and other persons who may be affected thereby." *See* Defendant's Appendix at 3, Contract, General Conditions § 10.2.1. Moreover, there is no genuine issue of material fact that Eischeid was either an "employee on the work" or one of the "other persons" for whose benefit this portion of the contract was made. *Farris*, 354 N.W.2d at 255. Thus, Dover was subject to a nondelegable "contractual" duty to Eischeid to take reasonable precautions to prevent injury to him.

Once again, however, the existence of a nondelegable duty is not the end of the matter; rather, Eischeid must also show breach of that duty. *See, e.g., Kolbe*, 661 N.W.2d at 145 (in addition to a legal duty, the plaintiff in a negligence action must show breach of duty, that the breach proximately caused his injuries, and the amount of damages). Dover contends that, at the very least, there are genuine issues of material fact as to whether it breached its "contractual" duty to provide for the safety of the work place. In support of this contention, Dover again relies on evidence that it repeatedly complained to Woods Masonry about the subcontractor's failure to brace the walls as required by the contract and OSHA regulations. However, for the same reasons that the court found above that no reasonable jury could find that Dover exercised reasonable care to prevent work on the site from being done in an unreasonably dangerous manner, it now finds that no reasonable jury could find that Dover's conduct fulfilled its contractual duty to take "reasonable precautions for safety of" or to "provide reasonable protection" for employees on the work site.

Again, to obtain summary judgment on the liability portion of his negligence claim against Dover, premised on breach of a "contractual" duty, Eischeid must also show that the breach of duty proximately caused his injuries. *See, e.g., Kolbe*, 661 N.W.2d at 145. Dover's contention that Eischeid has failed to establish proximate cause as a matter of law

is as unavailing for purposes of Eischeid's "contractual liability" theory as it was for purposes of his "control of the job" theory. For all of the reasons stated above, with regard to the breach of the duty to provide a safe work place arising from "control of the job," there are no genuine issues of material fact that Dover's failure to comply with its nondelegable "contractual" duty to provide a safe workplace was a proximate cause of Eischeid's injury.

Therefore, the court finds that Eischeid is also entitled, as a matter of law, to summary judgment on the liability portion of his "direct" negligence cause of action against Dover on his "contractual liability" theory.

### C. Motions To Sever And To Intervene

The third motion now before the court— again, logically, if not by docket number—is Eischeid's Motion To Sever Third–Party Claims (docket no. 108), and the last motion now before the court is Eischeid's related Motion To Intervene In Third–Party Actions (docket no. 107). Eischeid asserts that his Motion To Sever and his Motion To Intervene are premised primarily on the assumption that the court will grant his motion for summary judgment on Dover's liability. That assumption has been fulfilled. Therefore, the court will consider the merits of these motions as well.

#### 1. Arguments of the parties

As to these motions, Eischeid contends that, if the court grants his summary judgment motion, the only matters remaining for determination by a jury would be damages on his "direct" cause of action against Dover, and the claims in the third-party indemnity action between and among Dover, Woods Masonry, and DeLoss. He contends that his damages claim against Dover should be severed from the indemnity action pursuant to Rules 14(a) and 42(b) of the Federal Rules of Civil Procedure in the interests of judicial economy and clarity of the issues to be presented to a jury or juries. He argues that cases on which the court relied in its ruling on motions for summary judgment on claims by and against Woods Masonry suggest such a procedure. He then contends that, if he

obtains a damages verdict against Dover in excess of a million dollars, he has an interest in the indemnity action that may not be adequately protected by Dover, owing to the respective insurance limits of the parties, such that he should be allowed to intervene in the third-party indemnity action as of right.

Woods Masonry joins in Eischeid's Motion To Sever and, assuming the court grants Eischeid's Motion To Sever, Woods Masonry has no objection to Eischeid's intervention in the third-party actions, provided that a jury verdict in excess of one million dollars has been obtained against defendant Dover. However, Woods Masonry contends that Eischeid's own fault is relevant to the determination of the third-party indemnity claims. Eischeid filed a reply to that assertion on August 20, 2003, arguing that there is no evidence of his comparative fault.

Dover and DeLoss resist both the Motion To Sever and the Motion To Intervene. Dover argues that, because Eischeid is already a party to the action in which the third-party claims are set to be tried, it seems "circular" to sever those third-party claims, then allow Eischeid to intervene to protect some supposed interest in the third-party claims. Dover argues that Eischeid will not be prejudiced by trying all of the remaining claims together, where one jury can hear all of the evidence and render all of the necessary findings, instead of requiring the parties to present some of the pertinent evidence twice to two different juries. DeLoss likewise contends that a single jury should hear all of the remaining claims together and that it should not be compelled to defend in a separate lawsuit at additional expense, or be excluded from the main trial where decisions could prejudice DeLoss in its absence. On the other hand, DeLoss also argues that Eischeid does not belong in the middle of the separate trial of the third-party action by Woods Masonry against DeLoss.

#### 2. Analysis

##### a. Bifurcation or severance

█ The third-party claims that Eischeid seeks to sever, then intervene in, are claims

of indemnity by and among Dover, Woods Masonry, and DeLoss. Rule 14(a) of the Federal Rules of Civil Procedure provides that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." FED. R. CIV. P. 14(a). Similarly, Rule 42(b) provides,

> **(b) Separate trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claims, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. R. CIV. P. 42(b). A district court's determination of whether or not to sever or bifurcate under Rule 42(b) is reviewed for abuse of discretion. *See Athey v. Farmers Ins. Exchange,* 234 F.3d 357, 362 (8th Cir. 2000). The court does not abuse its discretion by denying a motion to bifurcate, if the movant has not shown that the denial prejudiced its case. *Id.*

 Somewhat more specifically,

District courts possess broad discretion to bifurcate issues for purposes of trial under Fed.R.Civ.P. 42(b). In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion. *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil,* 704 F.2d 1038, 1042 (8th Cir.1983). It has long been established that this court should only reverse a district court's decision to bifurcate on a finding of a clear abuse of discretion. *Chicago, Rock Island & Pac. R.R. Co. v. Williams,* 245 F.2d 397, 404 (8th Cir.), *cert. denied,* 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63 (1957)

This court has held that where the issues in a case are clearly separable, bifurcation is not an abuse of discretion. *Beeck v. Aquaslide 'N' Dive Corp.,* 562 F.2d 537 (8th Cir.1977) (separate trial solely on the issue of whether the product was manufactured by the defendant). Rule 42(b) bifurcation must be carefully considered where injury has an important bearing on liability. *Hosie v. Chicago North Western R.R. Co.,* 282 F.2d 639, 643–44 (7th Cir.1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

*O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1201–02 (8th Cir.1990).

 The court is satisfied that the requirements for severance of trial on the damages portion of Eischeid's "direct" negligence action against Dover from trial on the third-parties' indemnity claims have been met. Specifically, such a severance is most likely to result in "clarity" and avoidance of "confusion" of the issues that each jury must decide, and also result in "judicial economy" and "expedition," in the sense that each trial will be brief and focused. *See, e.g., O'Dell,* 904 F.2d at 1201–02 (identifying these factors as relevant to the exercise of the court's discretion to bifurcate issues for purposes of trial); *see also* FED. R. CIV. P. 42(b) (also identifying "expedition" and "economy" as pertinent factors). Severance will focus the "damages" trial against Dover entirely on the issue of Eischeid's damages, without interjecting issues regarding how those damages will be divided among Dover and the third parties as a result of indemnity claims. The court is also satisfied that this procedure is in accordance with the cases upon which the court relied when the court determined that the indemnity action should be tried under "comparative fault" procedures. *See Eischeid v. Dover,* 265 F.Supp.2d at 1047, 1058–59 (N.D.Iowa 2003) (citing *Sward v. Nelson Construction, Inc.,* 2003 WL 118206 (Iowa Ct.App.Jan.15, 2003), and *Martin & Pitz Assocs., Inc. v. Hudson Constr.,* 602 N.W.2d 805, 807 (Iowa 1999), for the proposition that indemnity claims could be tried under "comparative fault" procedures). Specifically, in *Martin & Pitz, Inc.,* 602 N.W.2d at 807, the initial claim between the injured party and the architect had been settled, and the architect sought to recoup the expenses of the settlement in a subsequent indemnity action. *Id.* at 1059. None of the objecting parties has demonstrated that it would be prejudiced

by severing the trial of the indemnity claims from the trial of Eischeid's damages claims against Dover. Rather, the claims in the two actions are "clearly separable," *see O'Dell,* 904 F.2d at 1202 ("where the issues in a case are clearly separable, bifurcation is not an abuse of discretion"), because Eischeid's "direct" action is to determine his damages flowing from Dover's own negligence, where Dover is vicariously liable for Woods Masonry's negligence under the nondelegable duty rules discussed above. The indemnity action, on the other hand, is to determine what portion of those damages, if any, Dover can recover from Woods Masonry for Woods Masonry's negligence, and what portion of Woods Masonry's damages, if any, Woods Masonry can recover from DeLoss for De-Loss's negligence. In other words, neither Woods Masonry's nor DeLoss's negligence, if any, has any impact on the "direct" action between Eischeid and Dover, nor does any determination in the "direct" action decide an issue that would otherwise be litigable in the indemnity action.

Eischeid's Motion To Sever will be granted.

### b. Intervention

Eischeid seeks to intervene in the third-party indemnity actions, if they are severed, as a matter of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Rule 24(a) provides as follows:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a). As the Eighth Circuit Court of Appeals has explained,

A party seeking to intervene must establish both that it has standing to complain and that the elements of Rule 24(a)(2) are met. Rule 24(a)(2) requires that the proposed intervenor establish [ (1) ] that it claims an interest in the property or transaction which is the subject of the litigation, [ (2) ] that disposition of the litigation in the party's absence may impede or impair its ability to protect its interest, and [ (3) ] that the interest is not adequately represented by the current parties to the suit. *Fed.R.Civ.P.* 24(a)(2); *Jenkins v. Missouri,* 78 F.3d 1270, 1274 (8th Cir.1996).

*South Dakota v. Ubbelohde,* 330 F.3d 1014, 1023 (8th Cir.2003); *South Dakota ex rel Barnett v. U.S. Dep't of Interior,* 317 F.3d 783, 785 (8th Cir.2003) (Rule 24(a) "provides that a party seeking mandatory intervention must establish that: (1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties."); *Curry v. Regents of Univ. of Minn.,* 167 F.3d 420, 422 (8th Cir.1999) ("Upon timely application, a party seeking intervention of right must establish that it: '(1) ha[s] a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties.' ") (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 570, 571 (8th Cir.1998), in turn quoting *Mausolf v. Babbitt,* 85 F.3d 1295, 1299 (8th Cir.1996)); *Chiglo v. City of Preston,* 104 F.3d 185, 187 (8th Cir. 1997) (same). Rule 24(a) "should be liberally construed with all doubts resolved in favor of the proposed intervenor." *South Dakota ex rel Barnett,* 317 F.3d at 785. However, " '[w]hile Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties in others' lawsuits, the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." ' *Curry,* 167 F.3d at 423 (quoting *Mausolf,* 85 F.3d at 1301). The district court's conclusion on a motion to intervene as of right is reviewed *de novo. Ubbelohde,* 330 F.3d at 1024; *South Dakota ex rel Barnett v. U.S. Dep't of Interior,* 317 F.3d 783, 785 (8th Cir.2003).

More specifically, "[a] proposed intervenor must satisfy all three conditions [of Rule 24(a)(2) ] to intervene as a matter of right." *South Dakota ex rel Barnett,* 317 F.3d at 785. To satisfy the "interest" and "impediment" requirements, a party must show more than a mere economic interest; rather, the interest must be "direct, substantial, and legally protectable." *Curry,* 167 F.3d at 423. " 'An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.' " *Standard Heating & Air Conditioning Co.,* 137 F.3d at 571 (quoting *Washington Elec. v. Massachusetts Mun. Wholesale Elec.,* 922 F.2d 92, 97 (2d Cir.1990)). Similarly, although the "inadequate protection" element imposes only a "minimal burden" on the movant, *id.; accord South Dakota ex rel Barnett,* 317 F.3d at 786, something more than a difference in motives must be shown if the movant and an existing party have essentially the same interests in the outcome of the litigation. *Curry,* 167 F.3d at 422–23. On the other hand, although the movant bears a "heavier burden" to show that its interests are not adequately protected when an existing party has a *duty* to protect its interests, *see South Dakota ex rel Barnett,* 317 F.3d at 785–86, that "heavier burden" is not applicable here, where no existing party has any duty to protect Eischeid's interests, if any, in the outcome of the third-party litigation.

The court doubts very much that Eischeid has the necessary "interest" to intervene as a matter of right in the indemnity action between and among Dover and the third parties. Notwithstanding his contentions to the contrary, his interest in being made whole has nothing to do with the respective insurance limits of Dover and Woods Masonry; rather, his interest in being made whole will be fully protected by his *judgment,* if any, against Dover. In other words, any judgment in his favor is the "property" in which he has an interest, not the insurance proceeds of Dover and any third parties that might be used to pay his judgment. If that judgment exceeds Dover's insurance limits, Dover should be more, not less, motivated to recover from Woods Masonry on Dover's

indemnity claim. Thus, Eischeid lacks the necessary "direct, substantial, and legally protectable" interest in the indemnity action to intervene as of right. *See Curry,* 167 F.3d at 423. His interest in that action, if any, is merely economic. *Id.* In the alternative, his interest in the outcome of the indemnity action is, at best, speculative—in that he assumes he will not otherwise be able to recover if his damages exceed Dover's insurance coverage—and hence, also contingent upon a sequence of events, and therefore, inadequate to warrant intervention as of right. *See Standard Heating & Air Conditioning Co.,* 137 F.3d at 571.

Although Eischeid did not expressly seek "permissive" intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, the court believes that the interests of justice dictate that the court also consider whether Eischeid should be permitted to intervene "permissively" in the severed indemnity action. "Permissive" intervention may be allowed "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). "The decision to grant or deny a motion for permissive intervention is wholly discretionary." *South Dakota ex rel Barnett,* 317 F.3d at 787 (citing cases). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Id.* The requirements for permissive intervention pursuant to Rule 24(b)(2) are satisfied in this case and the court has not been persuaded that Dover, Woods Masonry, or DeLoss would be prejudiced by Eischeid's intervention in the indemnity action, or that his intervention would unduly delay adjudication of the indemnity action. *See id.* Eischeid will be allowed to intervene "permissively" in the third-party indemnity action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

### III. CONCLUSION

In light of the foregoing,

1. Eischeid's Motion For Extension Of Dispositive Motion Deadline (docket no. 106)

is **granted**. The dispositive motion deadline is extended to July 29, 2003, so that the court has considered Eischeid's Motion For Summary Judgment on the merits.

2. Eischeid's Motion For Summary Judgment (docket no. 105) on Dover's liability is **granted**. Eischeid is entitled to summary judgment on the "liability" portion of his "direct" negligence claim against Dover. Eischeid's "direct" negligence action against Dover will, therefore, proceed to trial only on the issue of damages.

3. Eischeid's Motion To Sever Third–Party Claims (docket no. 108) is **granted**. The trial presently scheduled to begin on September 8, 2003, shall involve only damages on Eischeid's "direct" negligence claim against Dover. By separate order, the court will reset trial on the indemnity action by and among Dover, Woods Masonry, and DeLoss.

4. Eischeid's related Motion To Intervene In Third–Party Actions (docket no. 107) is **denied** as to intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, but **granted** as to permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**