Deo **KOENIGS** and Joan Koenigs, Appellees,

v.

**MITCHELL COUNTY BOARD OF SUPERVISORS, Appellant,**

Marvin **FISHER** and Doris Fisher, Defendants–Appellees.

No. 02–0390.

Supreme Court of Iowa.

April 2, 2003.

Carlton G. Salmons of Gaudineer, Comito & George, L.L.P., West Des Moines, for appellant.

Quintin A. Goeke of Hagemann & Goeke, Clarksville, Habbo Fokkena of Fokkena Law Office, Clarksville, and Linda Kobliska, Alta Vista, for appellees-Koenigs.

Robert Mulhenbruch, Ackley, for appellees-Fishers.

STREIT, Justice.

The central issue before us is whether Mitchell County has a duty to clean an obstructed ditch running perpendicular to a county highway. Deo and Joan Koenigs own real property east of Mitchell County's north-south road known as Walnut Avenue. On the west side of Walnut Avenue is Marvin and Doris Fishers' property upon which the ditch is located. Koenigs'

property has flooded as the result of natural obstructions in Fishers' ditch. The district court found the County has a duty to clean the ditch. The County appeals contending it has no obligation to maintain the ditch because the ditch does not belong to the County and is on private property. In the alternative, the County asserts any duty it may have had was obviated by its subsequent abandonment of an easement. Because we find the County does not have a duty to maintain the ditch, we reverse.

## I. Background and Facts

In the late 1940's the Iowa State Highway Commission began to acquire land from various landowners in Mitchell County. The highway commission planned to build a north-south road to McIntire, Iowa. To further its plans, the highway commission needed to build a concrete culvert to drain water from the east side of the road to the west side of the road. The west side land was then owned by the Danish Evangelical Lutheran Church. The church had a meandering stream running across its estate through marshy land.

In 1950, the highway commission and the church entered into a contract with the commission agreeing to dredge a ditch, filling in the marshy area and natural meandering stream with fill from the dredging. Although not mentioned in the contract, it appears the church agreed to convey sixty feet of right-of-way for the road. According to the contract, the church agreed to supply fill for the road bed. The ditch replaced the meandering stream across the church's property. The contract stated, "the [highway commission] shall have the right to construct and may maintain an open ditch. . . ." Whatever the precise nature of the County's interest in the land, it was restricted in scope and extent. The contract stated the County's possession was limited for the purposes

set forth in the contract. The main purpose of the contract was to allow the highway commission to build a ditch. The subservient purpose was to allow the commission to maintain the ditch, as necessary, during the construction of the road. By 1953, the highway commission completed the ditch. The dominant estate (Koenigs' land) drains surface water through a culvert under Walnut Avenue. The drainage then flows to the west of Walnut Avenue, into the ditch. From the church's estate, the drainage flows into the Wapsipinicon River. A supervisor for the county testified the ditch on Fishers' property was not necessary to and does not impact the integrity of the county road.

Two years later in 1955, the church sold its land to Marvin and Doris Fisher. The deed conveyed to the Fishers expressly provided it was "subject to drainage ditch easement." In 1975, Deo and Joan Koenigs acquired the property east of the road. Finally, in 1980, the Iowa Department of Transportation, successor to the Iowa State Highway Commission, conveyed the north-south road to Mitchell County. The current state of ownership of all of the parcels involved in this dispute is as follows: (1) Koenigs own the west property—the dominant estate; (2) Mitchell County owns the north-south road, now called Walnut Avenue; and (3) Fishers own the east property—the servient estate including the ditch constructed by the highway commission in 1953.

As early as 1970, drainage problems developed on Fishers' ground. It was not until 2000 that Koenigs realized there was a problem with the ditch. Since 1953, mature cottonwood and willow trees, brush, vegetation, tree limbs, shrubs, and siltation have impeded the flow of the ditch. There are no obstructions within the area of the County right-of-way or in the box culvert under Walnut Avenue hin-

dering drainage of Koenigs' land. The obstructions to drainage of Koenigs' land begin only where Fishers' property line meets with the County's right-of-way line and continues throughout the ditch on Fishers' land.

Neither Fishers nor Koenigs have ever attempted to clean the ditch. Koenigs argue the County has a duty to maintain the ditch. The County claims it has no duty to clean it because the ditch does not pose a problem to the maintenance of Walnut Avenue. The County also asserts Iowa Code section 721.2(5) makes it illegal for it to clean the ditch and that it vacated the easement.

On December 22, 2000, Koenigs filed an application for writ of mandamus and for crop damages against the Mitchell County Board of Supervisors. Koenigs argued the County had a duty to clean the ditch on Fishers' land for Koenigs' benefit. The court transferred the case to an equity docket, dismissed the damages claims, and ordered Fishers be brought into the case as indispensable parties. The parties submitted motions for summary judgment and the district court granted Koenigs' motion, holding the County was obligated to clean the ditch on Fishers' land. The County appeals.

## II. Scope of Review

 The district court's decision to issue a writ of mandamus involves the exercise of discretion. *Bellon v. Monroe County,* 577 N.W.2d 877, 878–79 (Iowa Ct. App.1998). Because a writ of mandamus is triable in equity, in general our review is de novo. *Id.* In this case, however, the appeal is a result of the district court's grant of summary judgment. Although the nature of the action is equitable, we "cannot find facts de novo in an appeal from summary judgment." *Keokuk Junction Ry. v. IES Indus., Inc.,* 618 N.W.2d

352, 355 (Iowa 2000) (quoting *Moser v. Thorp Sales Corp.,* 312 N.W.2d 881, 886 (Iowa 1981)). The proper scope of review of a case in equity resulting in summary judgment is for correction of errors of law. *Id.* We will uphold the grant of summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## III. The Merits

On appeal, we are called upon to determine whether the County has a duty to maintain the obstructed ditch. Because our conclusion as to this issue is determinative of the entire case, we will not address the other issues asserted by the County.

## A. Nature of the County's Interest in the Ditch

 The parties' disagreement centers on whether the County has an obligation to clean the ditch. Before we can determine whether the County has such a duty, we must first determine the precise nature of the County's interest in the ditch. In doing so, we look to the original document creating the County's interest. The Iowa State Highway Commission first gained an interest in the disputed property by contract with the Danish Evangelical Lutheran Church of America. In 1980, the department of transportation, as successor to the highway commission, conveyed the north-south road to the County. The County acquired any interest in the ditch originally granted to the highway commission in 1950. That is, when the state conveyed the state highway to the County, it also granted to the County "all rights, easements, title and interest in all land

used as street and highway right of way, all roadway, and all right of way and roadway appurtenances thereto."

 The 1950 contract between the highway commission and the Church provided:

In consideration of $1.00 ... the [Church]] hereby consents to the construction of a channel change.... It is agreed that [the Commission] shall have the right to construct and may maintain an open ditch extending due west ... thru the lowest part of the marshy land, to the east ... line ... to outlet in a natural drainage course. [The Commission] agrees to grade down the banks of the ditch to afford crossing same iṇ [the] location agreed upon between the [Church] and the Engineer in charge of construction. It is further agreed that soil unfit for use in the highway grade will be wasted by spreading same over a low area ... south of said ditch, as designated by the [Church].

It is hereby agreed that possession of the premises is the essence of this contract and that [the Commission] may take immediate possession of the premises upon the signing of this contract, for the purposes set forth....

Should the highway as finally located require none of the real estate described, this contract becomes null and void....

Though the parties have both labeled the County's interest in the property an "easement," the parties are contemplating different types of easements. The conclusion that the County's interest in the ditch is that of an easement is rendered uncertain based purely on the words of the contract.[1]

 The record reveals extensive confusion among the parties regarding whether this was a drainage easement. Koenigs argue the County acquired a drainage easement for the express purpose of satisfying its alleged duty to adequately drain the dominant estate. The deed conveying the parcel of land to Fishers stated the deed was subject to the "drainage ditch easement."[2] This language misconstrues the original 1950 contract to mean the highway commission had a permanent drainage easement. However, the 1950 document was not a typical easement in that it was not created to drain the ditch because the drainage was to occur naturally as it did before the road construction. The highway commission did not construct a drainage system or a drainage district. *See generally* Iowa Code ch. 468 (2001). Absent from this contract is any language indicating the highway commission had an easement to conduct and convey water flowing or to flow to the ditch on Fishers'

1. Certain language in the contract contradicts the conclusion the highway commission had an easement. For example, the contract states the "essence of the contract" is possession. A main characteristic of easements is that they are non-possessory interests in land. 28A C.J.S. *Easements* § 5, at 169–70 (1996) (an easement is distinct from the right to occupy the land itself). An easement always implies an interest in the land in and over which it is to be enjoyed. 25 Am.Jur.2d *Easements and Licenses* § 3, at 572 (1996). On the other hand, a license confers a personal privilege to do some act on another's land. *Id.* The contract states the highway commission "shall have the right to construct and may maintain an open ditch." Language granting the highway commission a right or privilege to come onto the Church's land for a specific purpose is suggestive of a license rather than an easement. *See id.* Despite these isolated elements of the contract, the overall agreement indicates the parties' intention to create an easement or a right in the nature of an easement.

2. A reference in a deed to the existence of an easement is not the equivalent of an intent to create an easement. 25 Am.Jur.2d *Easements and Licenses* § 18, at 586–87.

property. In other words, this was not a permanent easement designed to allow the County to drain water into the ditch in perpetuity. Rather, for the reasons discussed below, the easement was limited in its duration to the time it took the highway commission to dredge the ditch and build the road.

It appears, at most, the highway commission had an easement for two purposes only. Most importantly, the primary purpose for the easement was to *build* a ditch. As a corollary to the commission's right to build the ditch, it had an easement to maintain the ditch during the road construction process. The words of the contract support this determination stating the highway commission "shall have the right to construct" an open ditch. These words make certain the easement was limited for the sole purpose of building the ditch. Pursuant to this contract, the highway commission dredged the ditch. It used the soil to fill in the road bed and to aid in the construction of the county road. The parties bargained for nothing more than a dump and harvest site for building the road. We now turn to the crux of the case before us, i.e., the extent of the County's maintenance easement.

**B. County's Contractual Maintenance Obligation**

 The laws regarding the respective duties of an easement holder and servient estate are well settled. Absent an agreement to the contrary, the general rule is:

> easement holders have all such rights as are incident or necessary to the reasonable and proper enjoyment of their easement. However, every benefit has a corresponding burden. Accordingly, easement holders not only have the right but an obligation to repair and maintain their easement as necessary.

Barry J. Kusinitz, *Adverse Possession & Easements*, 47 Rhode Island Bar J. 5, 36 (1999); Restatement (Third) of Property § 4.13, at 631–32 (2000). The case before us is not subject to the general rule because the parties have a contract dictating the extent of the County's easement and consequent obligations. As such, the issue of the County's duty to maintain the ditch is entirely one of contract.

The contract specifically addressed the right of the County to maintain the ditch stating the County "may maintain an open ditch" and will take "possession of the premises ... for the purposes set forth." The County argues the phrase "*may* maintain" vests discretion in the County to decide if and when to maintain the ditch. Koenigs argue the County is under a mandatory duty to clean the obstructed ditch.

 The meaning of "may" as an isolated word is not ambiguous; may is generally understood to be permissive. It is true the word "may" in a contract can be permissive in one instance and mandatory in another. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, n. 9, 115 S.Ct. 2227, 2236, n. 9, 132 L.Ed.2d 375, 389, n. 9 (1995). We, however, do not interpret this contractual term apart from the context of the agreement as a whole. 11 Richard A. Lord, *Williston On Contracts* § 30:10, at 107 (4th ed.1999); *Lincoln Nat. Life Ins. Co. v. Fischer*, 235 Iowa 506, 514–15, 17 N.W.2d 273, 277 (1945) (discussing use of "may" in a state statute); D. Mellinkoff, *Mellinkoff's Dictionary of American Legal Usage* 402–03 (1992) ("shall" and "may" are "frequently treated as synonyms" and their meaning depends on context). The parties' intent as evidenced by all of the terms of the contract controls our conclusion. *Grinnell Mut. Reins. Co. v. Jungling*, 654 N.W.2d 530, 536 (Iowa 2002) (citing *A.Y. McDonald Indus. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991)).

Given the restricted purpose of this easement, we will not interpret the word "may" to be mandatory in this situation. By the terms of the contract, it is clear the easement was only for the purpose of building the ditch. That is, the main purpose of the contract between the highway commission and the church was to allow the commission to dredge the ditch in connection with its construction of the road. The contract did not state the County "may periodically maintain the ditch for years to come." It likewise did not say "in exchange for the right to build the ditch, the highway commission is responsible for its maintenance in perpetuity." There is no language indicating the highway commission shouldered the responsibility for keeping the ditch free from obstructions. The document as a whole does not reflect a permanent easement, but rather a maintenance easement that was restricted to the sole purpose of dredging the ditch during the road construction.

Our conclusion that the maintenance easement was limited in scope and duration is supported by the other terms of the contract. The parties' intention was to create an easement on Fishers' property for a limited duration. The contract expressly stated, "Should the highway as finally located require none of the real estate described, this contract becomes null and void." Similarly, the parties agreed the highway commission would take possession of the property only for the purposes set forth in the contract, i.e., to build the ditch. Common sense dictates the maintenance easement of the ditch would last only as long as was necessary to complete the road construction and leave the ditch in its final form. After the road was completed, the highway commission did not have any interest in Fishers' property and the easement rights ended.

▇▇ In sum, it is clear from the nature of the contract, the County, by way of the highway commission's initial contract, is under no obligation to maintain the ditch. "Surface water is a common enemy, which every proprietor must fight for himself as long as it takes its natural course." 63 C.J.S. *Municipal Corporations* § 790, at 535 (1999); *Woods v. Inc. Town of State Centre,* 249 Iowa 38, 44, 85 N.W.2d 519, 523 (1957). The County's permissive right to maintain the ditch was limited in scope and duration and does not mean the County has a duty to fight Koenigs' battle.

## C. Riparian Law

Because the County is under no obligation to clear the obstructed ditch, our common law of riparian rights dictates who has this duty. *See Moody v. Van Wechel,* 402 N.W.2d 752, 757 (Iowa 1987); *Oak Leaf Country Club, Inc. v. Wilson,* 257 N.W.2d 739, 745 (Iowa 1977); *Ditch v. Hess,* 212 N.W.2d 442, 448 (Iowa 1973); *Braden v. Bd. of Supervisors,* 261 Iowa 973, 976–77, 157 N.W.2d 123, 125 (1968); *Eppling v. Seuntjens,* 254 Iowa 396, 401, 117 N.W.2d 820, 823 (1962). Although Fishers were joined as an indispensable party, the issue of the rights and obligations between Fishers and Koenigs was not litigated before or decided by the district court. As such, we do not rule on this issue.

## IV. Conclusion

The contract gave the County a permissive right to maintain the ditch as necessary for the construction of the road. Because the County does not have a duty to maintain the ditch, a mandamus action was not appropriate in this case. *See* Iowa Code § 661.1 (action in mandamus is one brought to command the performance of an act, the performance or omission of which the law enjoins as a duty); *Hicks v.*

*Franklin County Auditor*, 514 N.W.2d 431, 441 (Iowa 1994). We reverse the district court's denial of the County's motion for summary judgment. We remand to the district court with directions to enter an order granting summary judgment for the County and striking the order to remove all obstructions from the ditch.

**REVERSED AND REMANDED.**

All justices concur except TERNUS, J., who concurs specially.

**TERNUS, Justice (specially concurring).**

While I agree with the majority that the trial court erred in ordering the County to clear the ditch, as it had no obligation or duty to do so, I disagree with the majority's analysis of the nature and scope of the County's right to maintain the ditch. The majority interprets the contract to allow the County to come on the servient property to maintain the ditch only during construction of the road. Contrary to the majority's view, I do not think the language of the agreement expressly or impliedly limits the duration of the County's "easement" as it relates to maintenance of the ditch. Moreover, it appears the church believed the County continued to have an interest in its land as the church's conveyance of the property to the Fishers was made subject to the County's "easement." The creation of a continuing power to maintain the ditch is a logical interpretation of the contract not only based on the absence of any limiting language, but also based on the attendant circumstances. The highway commission may very well have anticipated a future need to clear the ditch itself in the event obstructions in the ditch threatened the integrity of the roadbed.

In summary, I agree with the majority that the County merely had the right to enter the Fishers' property to maintain the ditch, but had no obligation to do so. I disagree, however, with the majority's conclusion that this privilege terminated upon completion of the roadway.