Shawn COCHRAN, Plaintiff,

v.

GEHRKE, INC., and National Tank Corporation, Defendants,

and

Gehrke, Inc., Cross–Claim Plaintiff,

v.

National Tank Corporation, Cross–Claim Defendant,

Patricia C. Wegener and Larry N. Wegener, as Administrators of the Estate of Allan Jeffrey Wegener, and Larry N. Wegener, Patricia C. Wegener, Amy Powers, and Abby Wegener, individually, Plaintiffs,

v.

Gehrke, Inc., Eagle Grove Crane Service, Inc., and Terracon, Inc., Defendants,

and

Gehrke, Inc., Third–Party Plaintiff,

v.

National Tank Corporation, Third–Party Defendant.

Nos. C 01–161–MWB, C 02–0108–MWB.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

March 3, 2004.

Donald J. Pavelka, Jr., Thomas M. Braddy, Thomas M. Locher, Locher, Cellilli, Pavelka & Dostal, LLC, Omaha, NE, Marc Thomas Beltrame, Megan M. Antenucci, Des Moines, IA, John A. Templer, Jr., Whitfield & Eddy, PLC, Frank A Comito, Kent Alan Gummert, Gaudineer & Comito, LLP, West Des Moines, IA, for Defendants.

Marc S. Harding, Marc S. Harding PC, Dwight W. James, Jennifer Gerrish–Lampe, The James Law Firm, PC Des Moines, IA, for Plaintiffs.

# 1046

MEMORANDUM OPINION AND OR-
DER REGARDING DEFENDANT
GEHRKE'S MOTION FOR PAR-
TIAL SUMMARY JUDGMENT

MEMORANDUM OPINION AND OR-
DER REGARDING DEFENDANT
GEHRKE'S FIRST AND SECOND
MOTIONS FOR PARTIAL SUM-
MARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................1046
    A.   Factual Background .........................................1046
    B.   Procedural Background ......................................1047

II. LEGAL ANALYSIS ................................................1048
    A.   Standards For Summary Judgment .............................1048
    B.   Gehrke's Indemnity Claim In The Wegener Case ...............1049
    C.   Gehrke's Duty To Protect Subcontractors' Employees ........1050
         1.   Arguments of the parties .............................1051
         2.   Applicable law .......................................1053
              a.   The general rule and exceptions ...............1053
              b.   The applicable exception ......................1053
         3.   Analysis .............................................1054
              a.   The nominated contractual provision ...........1054
              b.   Interpretation and construction of contractual provisions .........1055
                   i.   Applicable rules .........................1055
                   ii.  Application of the rules .................1056

III. CONCLUSION ....................................................1058

These separate actions arise from one construction accident in which two workers, employed by different subcontractors, were critically injured or killed. The general contractor on the construction project, a defendant in both actions, has filed essentially identical motions for partial summary judgment in both actions asserting that, as a matter of law, it was under no duty to protect the subcontractors' employees from injury on the job site. In addition, the general contractor has filed a motion for partial summary judgment in one of the actions on an issue already addressed in the other action, which is the general contractor's contention that its indemnity agreement with one of its subcontractors is valid, enforceable, and applicable to the claims in these cases. These actions have thus far been consolidated only for the purposes of discovery. However, in light of the interrelationship of the issues raised in the general contractor's dispositive motions in both actions, the court finds that judicial economy dictates a consolidated ruling on those motions.

## I.  INTRODUCTION

### A.  Factual Background

The court has surveyed in various prior rulings the factual background in these two cases that is essential to put in context the parties' disputes. *See, e.g., Cochran v.*

*Gehrke, Inc.*, 293 F.Supp.2d 986, 988–90 (N.D.Iowa 2003) (*Cochran II*); *Cochran v. Gehrke Constr., Inc.*, 235 F.Supp.2d 991, 994 (N.D.Iowa 2002) (*Cochran I*); *Wegener v. Gehrke, Inc.*, slip op. at 2, No. C 02–0108–MWB (N.D.Iowa Jan. 10, 2003) (Memorandum Opinion and Order Regarding Defendants' Motions for Partial Dismissal (docket no. 20)). The parties do not appear to take issue with the court's prior factual synopses, so the court will reprise them here.

As indicated above, the claims among the parties arise from a construction accident on July 20, 2000, during the erection and refurbishing of a water tower in New Providence, Iowa. The City of New Providence had hired Gehrke, Inc., as the general contractor for the project. Gehrke performed "the dirt work" itself, but subcontracted with National Tank Corporation to perform some of the construction work. National Tank, in turn, hired Eagle Grove Crane Service to set up and operate the crane used in connection with the water tower project.

At the time of the accident, Shawn Cochran, an employee of Eagle Grove, was operating a crane lifting the refurbished water tank onto the base, and Allan Wegener, an employee of National Tank, was working on the water tower base. Cochran alleges that, while the water tank was being placed on the tower, "[t]he ground beneath the crane slowly sank, causing instability that [Cochran] was powerless to control," and "[t]he crane toppled, dropping [Cochran] approximately 140 feet to the ground below," with the result that Cochran was "critically injured." The Wegener plaintiffs allege that, when the crane operated by Cochran toppled into the water tower, it caused Allan Wegener

to fall to his death from the water tower base.

## B. Procedural Background

Cochran's and Wegener's separate negligence actions, as well as various cross-claims and third-party claims for negligence, indemnity, and contribution, followed in the wake of the construction accident. Although various matters have come before the court in the course of the litigation of these two lawsuits, now before the court are three dispositive motions, two in the *Wegener* case and one in the *Cochran* case.

The first motion is Gehrke's December 24, 2003, Motion for Partial Summary Judgment (docket no. 40) in the *Wegener* case, in which Gehrke seeks summary judgment in its favor on its contention that its indemnity agreement with National Tank is valid, enforceable, and applicable to the claims in the *Wegener* case. National Tank resisted Gehrke's motion on indemnity issues in the *Wegener* case on February 6, 2004 (docket no. 51). Gehrke filed a reply brief in further support of its motion on February 12, 2004 (docket no. 54) and a reply to National Tank's statement of additional facts on February 13, 2004 (docket no. 55).

On January 12, 2004, Gehrke filed in both the *Wegener* case and the *Cochran* case essentially identical Motions For Partial Summary Judgment seeking summary judgment to the effect that Gehrke did not owe a duty to protect the subcontractors' employees from injury on the New Providence job site (*Cochran* docket no. 61; *Wegener* docket no. 44). In the *Cochran* case, National Tank filed its resistance to that motion on February 6, 2004 (docket no. 65), and Cochran filed a resistance on February 23, 2004 (docket no. 74).[1] In the

---

1. Gehrke apparently received a timely resistance from plaintiff Cochran, but Cochran's

resistance was not filed with the court at that time, owing to some unascertained clerical

*Wegener* case, the Wegener plaintiffs resisted Gehrke's "no duty" motion on February 5, 2004 (docket no. 49); National Tank resisted that motion on February 6, 2004 (docket no. 50); and Eagle Grove resisted that motion on February 9, 2004 (docket no. 52). Gehrke filed a unified reply in support of its motion for partial summary judgment on the "no duty" issue in both cases on February 17, 2004 (*Cochran* docket no. 72; *Wegener* docket no. 62).

The court heard consolidated oral arguments on Gehrke's motions on February 26, 2004. At those oral arguments, plaintiff Shawn Cochran was represented by Marc S. Harding of Marc S. Harding, P.C., in Des Moines, Iowa. The Wegener plaintiffs were represented by Jennifer Gerrish–Lampe of The James Law Firm, P.C., in Des Moines, Iowa. Gehrke, Inc., was represented by Thomas M. Braddy of Locher, Cellilli, Pavelka & Dostal, L.L.C., in Omaha, Nebraska. National Tank Corporation was represented by Megan M. Antenucci and Marc T. Beltrame of Whitfield & Eddy, P.L.C., in Des Moines, Iowa. Eagle Grove Crane Service, Inc., was represented by Kent Alan Gummert of Gaudineer & Comito, L.L.P., in West Des Moines, Iowa. Upon conclusion of the oral arguments, Gehrke's motions were fully submitted. The oral arguments were very spirited and of substantial assistance to the court in resolving the pending matters.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that either the claimant or the defending party may move for summary judgment in its favor on all or any part of a claim. *See* FED. R. CIV. P.

56(a) & (b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

A case in which the issues involved are primarily questions of law, which Gehrke contends is the case here, "is particularly appropriate for summary judgment." *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir.2002) (citing *Adams v. Boy Scouts of America–Chickasaw Council*, 271 F.3d 769, 775 (8th Cir.2001)); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir.1996) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1315 (8th Cir.1996) (same). However, National Tank, Eagle Grove, and the plaintiffs contend that genuine issues of material fact preclude summary judgment in Gehrke's favor on any of the issues that Gehrke has raised.

In circumstances where the presence or absence of a genuine factual dispute is the fighting issue on a motion for summary judgment, the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that

error. The court noticed Gehrke's reference to a resistance by Cochran in Gehrke's reply, and therefore, set a deadline of February 20, 2004, for Cochran to file the missing resis-

tance with the court as well. The court received a courtesy copy of Cochran's resistance on February 19, 2004, a few days prior to its actual filing.

party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick,* 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

The court will apply these standards to Gehrke's motions for partial summary judgment in these cases.

### B. Gehrke's Indemnity Claim In The Wegener Case

The court turns, first, to Gehrke's Motion for Partial Summary Judgment in the *Wegener* case on indemnity issues. In this motion, Gehrke states that it is not seeking a determination of liability of the parties, but is, instead, requesting that the court rule, as a matter of law, that the indemnity provision of the Subcontract Agreement between Gehrke and National Tank is valid and enforceable against National Tank, in the event of judgment against Gehrke, and that Gehrke is entitled to its reasonable costs of defense and expenses, if proved, including those incurred in enforcing the indemnity provisions of the Subcontract Agreement. Gehrke points out that this motion is a reprise of issues raised in, and ruled on by the court, in the *Cochran* case pursuant to Gehrke's motion for partial summary judgment on its indemnity cross-claim against National Tank. *See Cochran II,* 293 F.Supp.2d at 986. In its resistance, National Tank

states that it respectfully disagrees with this court's opinion on the indemnity issues in *Cochran*. Therefore, National Tank reiterates in the *Wegener* case various arguments previously asserted in the *Cochran* case, and asserts some specific points of disagreement with the court's analysis and conclusions in *Cochran II*.

The court finds that in *Cochran*, it adequately—indeed, thoroughly—considered the parties' arguments, reiterated here, concerning the interpretation and construction of the indemnity agreement, its validity and enforceability, and its effect in these cases. The court concludes that its analysis in *Cochran* withstands both National Tank's reiterated arguments and National Tank's attempts to demonstrate in *Wegener* that the court erred in *Cochran*. Although the court recognizes National Tank's desire to preserve its arguments for appeal in both cases, the court concludes that no purpose would be served by reiterating here the court's entire analysis of the indemnity issues from the *Cochran* case.

Instead, the court's analysis and disposition of the issue of indemnity from National Tank to Gehrke in *Cochran II*, 293 F.Supp.2d 986, is incorporated into this ruling in the *Wegener* case by this reference, as if fully set out herein. Specifically, in light of all of the arguments presented in this case, the court reiterates the following conclusions from the *Cochran* case on the questions of the validity, enforceability, and effect of the indemnity provisions of the Gehrke–National Tank Subcontract Agreement in the *Wegener* case: (1) the indemnity provision of the Subcontract Agreement between Gehrke and National Tank is valid and enforceable, even to the extent that it imposes upon National Tank a duty to indemnify Gehrke for Gehrke's own negligence, because the indemnity provision clearly and unequivocally expresses that intent; (2) the indemnity provision expressly provides for National Tank to indemnify Gehrke for negligent acts causing damage by National Tank *or* Eagle Grove—as an entity employed directly or indirectly by National Tank, *i.e.*, whether or not National Tank "directed" the work by Eagle Grove—*or* Gehrke; and (3) National Tank must indemnify Gehrke for negligence of Gehrke *or* National Tank *or* Eagle Grove in carrying out the provisions of the general contract and of the Gehrke–National Tank Subcontract, as well as for Gehrke's legal fees in defending this action, and any disbursements paid or incurred by Gehrke to enforce the indemnity provision, including the costs and fees attributable to the present motion for partial summary judgment, *if* a jury determines that National Tank *or* Eagle Grove *or* Gehrke was negligent and that such negligence was a proximate cause of damage to the Wegener plaintiffs; however, (4) the ultimate question of whether or not Gehrke is entitled to indemnity from National Tank must await jury findings of negligence and proximate cause and the court's application of the indemnity provision, as interpreted and construed in *Cochran II*, to those findings. *See Cochran II*, 293 F.Supp.2d at 1002–3. Gehrke's December 24, 2003, Motion for Partial Summary Judgment (docket no. 40) in the *Wegener* case will, consequently, be granted.

### C. Gehrke's Duty To Protect Subcontractors' Employees

The "new" issue presented in both cases is Gehrke's contention that it is entitled to partial summary judgment in its favor that, as a matter of law, it was under no duty to protect the subcontractors' employees from injury on the New Providence job site. All of the other parties have resisted Gehrke's motions on the "no duty"

issue. Because this issue has not previously been addressed in either case, analysis of the "no duty" issue is now required.

### 1. Arguments of the parties

Gehrke argues in both cases that the general rule is that a general contractor is not vicariously liable for injuries arising out of a subcontractor's negligence. Gehrke recognizes that there are two exceptions to this rule: (1) when the general contractor retains sufficient control over the work and safety of its subcontractors under the terms of the contract between the general contractor and the subcontractor; and (2) when the work is likely to create a peculiar risk of harm or involves inherent danger. Gehrke contends that, as a matter of law, neither of these exceptions applies here. As to the first exception, Gehrke contends that it did not retain control of the work by its subcontractor, National Tank, but that, to the contrary, the subcontract imposes upon National Tank the responsibility for its own employees and subcontractors. Gehrke argues that a general contractor's retention of the rights to inspect the work of the subcontractor and make recommendations, and to stop work, are not enough to impose liability on the general contractor, and Gehrke had no further control of the subcontractors' work than that in this case. On the other hand, Gehrke argues that National Tank was responsible for everything to do with erection of the water tank and that all of Eagle Grove's employees perceived National Tank to be "in charge" of erection of the tank. As to "peculiar risk" and "inherent danger," Gehrke argues that the Iowa Supreme Court has not found such risks and dangers in any construction site situation since 1967. Moreover, Gehrke contends that the record in this case shows that all of the parties considered the water tank erection at New Providence to be a "routine" job not involving peculiar risk or inherent danger.

National Tank took the lead in resisting Gehrke's motion in each case, in terms of both written responses and oral arguments. In resistance to Gehrke's motion in each case, National Tank argues that a contract between an owner and a general contractor can create a nondelegable duty to provide reasonable precautions for employee safety and that, *under the terms of Gehrke's contract with the City of New Providence,* Gehrke retained sufficient control of the work place to be held liable for injury to subcontractors' employees. National Tank points out that provisions of the contract between the City and Gehrke (1) required Gehrke to adhere to the provisions of OSHA; (2) required Gehrke to assume full responsibility for the safekeeping of all materials and equipment and for all unfinished work until final acceptance by the City; (3) required Gehrke to exercise precautions at all times for the protection of persons, employees, and property, which included adhering to all safety and other applicable laws and local building and construction codes; and (4) required Gehrke to maintain a qualified superintendent to supervise the work until its completion. National Tank argues that, taken as a whole, the general contract placed upon Gehrke a nondelegable duty to maintain a safe work site until all work was completed on the project, and that it is undisputed that the work was not completed at the time of the accident at issue in these cases. Contrary to Gehrke's arguments, National Tank argues that nothing in the subcontract between Gehrke and National Tank relieved Gehrke of its duty to supervise the work place. National Tank also points out that post-accident depositions of two key employees of Gehrke show that those employees believed that Gehrke was responsible for

maintaining a safe work site on the New Providence project.

National Tank also argues that the work on the water tower at New Providence *did* involve "peculiar risk" or "inherent danger," or that there is a question of fact as to whether or not it did, because the height of the water tower and crane were in excess of the 80–foot drop from a roof in the last case in which the Iowa Supreme Court found a "peculiar risk" or "inherent danger," *Giarratano v. Weitz Company*, 259 Iowa 1292, 147 N.W.2d 824 (1967). National Tank also argues that the comments of various persons involved in the construction project concerning the relative risks or dangers of the project have been taken out of context by Gehrke and that, contrary to Gehrke's assertions, the full testimony of these witnesses generates genuine issues of material fact as to the riskiness of the work site.

The resistances by other parties generally echo National Tank's arguments. Therefore, the court finds it unnecessary to summarize separately those parties' arguments against Gehrke's "no duty" motion. Moreover, at the oral arguments on Gehrke's motions, the other parties all expressly joined in National Tank's arguments. However, it is worth mentioning that the Wegener plaintiffs also argued that granting summary judgment for Gehrke on the basis that the work at the New Providence construction site was *not* peculiarly risky or inherently dangerous would, in effect, be an improper attempt by this federal court to overrule controlling state precedent in *Giarratano*. Cochran and Eagle Grove also asserted that the "peculiarly risky or inherently dangerous"

issue is controlled by *Giarratano*, and must, therefore, be decided against Gehrke. Eagle Grove distinguished itself from the other parties by relying most heavily on Gehrke's retained control of the work site as a matter of fact and law, citing contractual duties of Gehrke to have a site supervisor present at all times and to supervise all work to completion. Eagle Grove contends that Gehrke violated these duties by failing to have a supervisor on site at the time of the accident and by failing to convey to Eagle Grove or National Tank observations and concerns one of the principals of Gehrke purportedly had about ruts in the mud and improper set up of the crane prior to the accident.

In its unified reply to all resistances, Gehrke argues that the general contract did not impose upon Gehrke a nondelegable duty to maintain safety of the work site. Gehrke argues that National Tank has failed to cite any provision of the general contract that imposes upon Gehrke a duty *to provide for the safety of workmen on the water tower project.* Instead, Gehrke contends that the provisions to which National Tank points impose upon Gehrke a duty of safekeeping of all materials and equipment, but not workers on the site; a duty to protect the public, but not workers on the site; and a duty to follow OSHA standards, but Gehrke was not cited for any OSHA violations.[2] Gehrke also argues that, as a matter of fact and law, the supervisory control that it maintained over the work site was insufficient to impose liability for the safety of subcontractors' employees. Gehrke also argues that the New Providence job did not involve "peculiar risk or inherent danger," because the *Giarratano* case upon which the other

---

**2.** Gehrke also argues that violation of OSHA requirements would impose liability on Gehrke only if the injured workers had been Gehrke's employees, but where the injured workers were not Gehrke's employees, but

employees of subcontractors, as was the case here, OSHA violations are no more than *evidence* of a breach of duty. However, Gehrke again points out that it was not cited for *any* OSHA violations.

parties rely cannot be read for the general proposition that any work performed at an elevation of eighty feet or more is peculiarly risky or inherently dangerous. Instead, Gehrke contends that these cases invoke the general rule that construction projects are not peculiarly risky or inherently dangerous, and that nothing takes this construction project outside of application of that general rule.

At the oral arguments, the Wegener plaintiffs responded to some of these arguments by asserting that, even if the general contract's work place safety provision only applies to "the public," as Gehrke contends, "the public" includes business invitees, such as the injured plaintiffs.

### 2. Applicable law

#### a. The general rule and exceptions

This court recently addressed the issue of whether or not a general contractor can be held liable under Iowa law for injuries to a subcontractor's employee involved in a construction site accident in *Eischeid v. Dover Construction, Inc.*, 217 F.R.D. 448 (N.D.Iowa 2003). In *Eischeid*, this court noted the following:

> [T]his court [has] recognized that, "[u]nder Iowa law, prime contractors ... are generally not liable for injuries arising out of a subcontractor's negligence." *State Auto Mut. Ins. Co. v. Dover Constr., Inc.*, 273 F.Supp.2d 1023, 1029–30, 2003 WL 21750954, *6 (N.D.Iowa 2003) (citing cases and RESTATEMENT (SECOND) OF TORTS § 409, which state this general rule). However, this court also recognized that "the Iowa Supreme Court has noted that 'this general rule "is riddled with a number of common-law exceptions that have practically subsumed the rule." ' " *Id.* (quoting *Kragel v. Wal–Mart Stores, Inc.*, 537 N.W.2d 699, 702 (Iowa 1995), in turn quoting *Rowley v. Mayor & City Council of*

*Baltimore*, 305 Md. 456, 462, 505 A.2d 494, 497 (Md.Ct.App.1986)).

*Eischeid*, 217 F.R.D. at 459–60. The parties arguments suggest that two of the potentially applicable exceptions in this case, as in *Eischeid*, are "contractual" liability and "control of the job," each of which "give[s] rise to a nondelegable duty to take reasonable precautions for employee safety," although the arguments of the parties in these cases tend to blur "contractual" liability and "control of the job." *Id.* at 460 (citing *Dover Constr., Inc.*, 273 F.Supp.2d at 1029–31). Based on the arguments of the parties, another exception potentially applicable here, but not discussed in *Eischeid*, is the "peculiarly risky and inherently dangerous activity" exception. *See Robinson v. Poured Walls of Iowa, Inc.*, 553 N.W.2d 873, 875 (Iowa 1996); *Kragel*, 537 N.W.2d at 703. Thus, at least three of the exceptions to the general rule that a general contractor has no duty to protect subcontractors' employees are potentially at issue here.

#### b. The applicable exception

Although the parties' arguments address at least three exceptions, upon review of the record, the court concludes that it need discuss in detail only one: the "contractual" liability exception. In *Eischeid*, this court explained the "contractual" liability exception as follows:

> [I]n *Farris [v. General Growth Dev. Corp.*, 354 N.W.2d 251 (Iowa Ct.App. 1984)], the Iowa Court of Appeals recognized that "the court in *Giarratano v. Weitz Company*, 259 Iowa 1292, 147 N.W.2d 824 (1967), stated that when a '[general contractor] assume[s] a duty under its contract with [the owner] for the safety of the workmen ... this responsibility cannot be delegated even though [the general contractor] had employed an independent contractor to do

the actual work.'" *Farris,* 354 N.W.2d at 254–55 (quoting *Giarratano,* 259 Iowa at 1305, 147 N.W.2d at 832). "Therefore," the court explained, "if we find that [a general contractor] assumed a duty under its contract with [the owner] for the safety of the workmen, such responsibility cannot be delegated to [a subcontractor]." *Id.* at 255. As the court in *Farris* also explained,

> The rule is well settled in Iowa that where a contract imposes a duty upon a person, the neglect of that duty is a tort, and an action ex delicto will lie. *Duke v. Clark,* 267 N.W.2d 63, 68 (Iowa 1978). It is clear [in the case before the court] that the contract between [the general contractor] and [the owner] imposed a duty upon [the general contractor] to provide reasonable precautions for employee safety. The tort sued upon however, is the neglect of a duty undertaken in a contract to which [the injured plaintiff] was not a party. Nevertheless, we find that [the injured plaintiff] was a member of a class for whose benefit the contract was made. The doctrine of third-party beneficiaries applies, and plaintiffs can maintain an action for [the general contractor's] failure to perform its contractual duty. *Giarratano,* 259 Iowa at 1308–09, 147 N.W.2d at 833.

*Farris,* 354 N.W.2d at 255. Thus, not only can a contract between the general contractor and the owner create a nondelegable duty to provide reasonable precautions for employee safety, an injured employee who is in the class of persons that the contractual duty was intended to protect can sue for breach of that duty as a third-party beneficiary of the contract. *Id.*

*Eischeid,* 217 F.R.D. at 463–64. Therefore, the question is whether the general contract between Gehrke and the City in these cases created a nondelegable duty on Gehrke's part to provide reasonable precautions for employee safety.

### 3. Analysis

#### a. The nominated contractual provision

In its written arguments, National Tank asserted that a number of provisions of Gehrke's general contract with the City establish Gehrke's contractual duty to provide a safe work place. However, at oral arguments, National Tank focused on only one of those provisions, which the court agrees is the only provision requiring analysis. That provision is Paragraph 6–04, which provides as follows:

> 6–04 SAFETY: Precautions shall be exercised at all times by the Contractor [Gehrke] for the protection of persons, employees and property. The safety provisions of applicable laws and local building and construction codes shall be observed.
>
> The operations of the Contractor for the protection of persons, and for guarding against hazards of machinery and equipment, shall meet the requirements of state law.

National Tank Corporation's Appendix (In *Wegener*) In Support Of National Tank Corporation's Resistance To Gehrke, Inc.'s Second Motion For Partial Summary Judgment, 81; National Tank's Appendix (In *Cochran*) In Support Of National Tank Corporation's Resistance To Gehrke, Inc.'s Second Motion For Partial Summary Judgment, 81. In order to demonstrate why consideration of this provision is sufficient to show that, as a matter of law, Gehrke *was* under a duty to protect subcontractors' employees, the court will address Gehrke's arguments that it does not have that effect.

Gehrke argues that this provision falls under the section heading "LEGAL RELATIONS AND RESPONSIBILITY TO PUBLIC," emphasizing "responsibility to public," and asserts that there is no mention in this provision of subcontractors or their employees. Gehrke contends that, because this provision refers only to protection of the "public," and "public" means the general populace, not persons involved in a specific enterprise or entity, the provision is not intended to include subcontractors. Gehrke argues, further, that subcontractors are recognized as a separate class and are discussed in a wholly separate provision, Paragraph 3–19. Gehrke points out, further, that Paragraph 3–19 imposes upon subcontractors the duty to provide for their *own* protection and requires that subcontractors assume toward the general contractor all of the obligations and responsibilities that the general contractor assumes toward the owner. Thus, Gehrke contends that any duty to protect subcontractors' employees that Gehrke might otherwise have had are expressly delegated to subcontractors. These arguments require the court to consider the Iowa rules for interpretation and construction of contracts.

### b. Interpretation and construction of contractual provisions

*i. Applicable rules.* This court recently summarized Iowa rules of contract interpretation and construction as follows:

> When the dispute concerns the meaning of certain contract terms, the court must engage in the process of interpretation, rather than construction. *See [Kaydon Acquisition Corp. v. America Central Indus., Inc.,* 179 F.Supp.2d 1022, 1037 (N.D.Iowa 2001)] (citing *Walsh v. Nelson,* 622 N.W.2d 499, 503 (Iowa 2001); *Fausel v. JRJ Enters., Inc.,* 603 N.W.2d 612, 618 (Iowa 1999), which notes that interpretation is "a process for deter-

mining the meaning of words in a contract" while construction is "a process of determining the legal effect of such words"; and *Fashion Fabrics of Iowa v. Retail Investors Corp.,* 266 N.W.2d 22, 25 (Iowa 1978), which states, "Interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect."). As this court has noted,

> The Iowa Supreme Court has explained that:
>
> The primary goal of contract interpretation is to determine the parties' intentions at the time they executed the contract. *See Hartig Drug Co. [v. Hartig],* 602 N.W.2d [794,] 797 [ (Iowa 1999) ]. Interpretation involves a two-step process. First, from the words chosen, a court must determine "what meanings are reasonably possible." *Restatement (Second) of Contracts* § 202 cmt. a, at 87 (1981). In so doing, the court determines whether a disputed term is ambiguous. A term is not ambiguous merely because the parties disagree about its meaning. *Hartig Drug Co.,* 602 N.W.2d at 797. A term is ambiguous if, "after all pertinent rules of interpretation have been considered," "a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Id.*
>
> Once an ambiguity is identified, the court must then "choos[e] among possible meanings." *Restatement (Second) of Contracts* § 202 cmt. a, at 87. If the resolution of ambiguous language involves extrinsic evidence, a question of interpretation arises which is reserved for the trier of fact. *Fausel,* 603 N.W.2d at 618.
>
> *Walsh,* 622 N.W.2d at 503.

*Kaydon Acquisition Corp.*, 179 F.Supp.2d at 1037–38. As to "pertinent rules of interpretation," the Iowa Supreme Court has explained that "We . . . do not interpret [any] contractual term apart from the context of the agreement as a whole. . . . The parties' intent as evidenced by all of the terms of the contract controls our conclusion." *Koenigs v. Mitchell County Bd. of Supervisors*, 659 N.W.2d 589, 594 (Iowa 2003). "Interpretation" is "a question of law for the court unless the meaning of disputed terms turns on extrinsic facts or choices among reasonable inferences." *Grinnell Select Ins. Co. v. Continental Western Ins. Co.*, 639 N.W.2d 31, 33 (Iowa 2002).

On the other hand, where the dispute centers on determining the legal effect of contractual terms, the court engages in the process of construction, rather than interpretation. *See Fausel*, 603 N.W.2d at 618; *Fashion Fabrics of Iowa*, 266 N.W.2d at 25. "In the construction of written contracts, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says." Iowa R. App. P. 6.14(6)(n). The Iowa Supreme Court has explained that "construction" is "always a question of law." *See Grinnell Select Ins. Co.*, 639 N.W.2d at 33.

*Central States Indus. Supply, Inc. v. McCullough*, 279 F.Supp.2d 1005, 1032–33 (N.D.Iowa 2003).

***ii. Application of the rules.*** In light of these rules of interpretation and construction, the court concludes that one of the provisions nominated by National Tank, Paragraph 6–04—which expressly states, "Precautions shall be exercised at all times by the Contractor [Gehrke] for the protection of persons, employees and property"—unambiguously imposes upon Gehrke a nondelegable duty to protect subcontractors' employees. Even assuming that there might be some ambiguity as to the meaning of "employees" in Paragraph 6–04 (*i.e.*, whether "employees" means employees of the City, the general contractor, any subcontractors, or all of them), there is no ambiguity as to the meaning of the all-encompassing term "persons," which plainly includes *anyone on the work site*. *See Central States*, 279 F.Supp.2d at 1033 (interpretation involves determination of possible meanings and resolving any ambiguities). Thus, as a matter of construction, *i.e.*, the legal effect of the contractual terms, *see id.*, Paragraph 6–04 expressly imposes upon Gehrke a duty to exercise at all times precautions for the protection of anyone on the work site, including subcontractors' employees.

Moreover, the court's construction of the first sentence of Paragraph 6–04, is confirmed when that sentence is read in the context of the rest of Paragraph 6–04 and the contract as a whole. *See id.* (courts must not interpret any contractual term apart from the context of the agreement as a whole). The remainder of Paragraph 6–04 requires adherence to general safety provisions of applicable law and requires that "operations of the Contractor for the protection of persons . . . shall meet the requirements of state law." Thus, Paragraph 6–04 is a "safe workplace" provision, which imposes upon Gehrke a duty to maintain a safe work place for the benefit of all "persons" on the work site for any reason.

Gehrke contends that expanding the context still further, to take into consideration the heading of the section in which the paragraph appears, requires a different reading. However, Gehrke's attempt to draw another interpretation or construction for this provision of the general contract from the section heading is una-

vailing. Assuming, without deciding, that section headings are of some assistance in the interpretation and construction of a contract, the court concludes that Gehrke's focus on the heading for Section 6 of the general contract is misdirected. While Gehrke focuses on the words "RESPONSIBILITY TO PUBLIC" in the heading to Section 6, and consequently reads Paragraph 6–04 to pertain only to safety of "the public," not to safety of subcontractors' employees, the full heading actually reads "*LEGAL RELATIONS* AND RESPONSIBILITY TO PUBLIC." *See* National Tank Corporation's Appendix (In *Wegener*) In Support Of National Tank Corporation's Resistance To Gehrke, Inc.'s Second Motion For Partial Summary Judgment, 81 (emphasis added); National Tank's Appendix (In *Cochran*) In Support Of National Tank Corporation's Resistance To Gehrke, Inc.'s Second Motion For Partial Summary Judgment, 81 (emphasis added). Thus, the section is plainly more general in scope than Gehrke contends, encompassing Gehrke's responsibilities to the City, including responsibilities to invitees on the work site.

Also wholly unpersuasive is Gehrke's contention that Paragraph 3–19, which pertains to "subcontracts," bars the interpretation of Paragraph 6–04 adopted by the court. Gehrke contends that Paragraph 3–19 specifically discusses subcontracts, imposes upon subcontractors the duty to provide for their *own* protection, and requires that subcontractors assume toward the general contractor all of the obligations and responsibilities that the general contractor assumes toward the owner, so that no other provision should be interpreted to relate to safety of subcontractors' employees. However, the court notes that Paragraph 3–19 provides that "[t]he Contractor is responsible to the Owner for the acts and omissions of his Subcontractors, and of their direct and indirect employees, to the same extent as he is responsible for the acts and omissions of his employees." *See* National Tank's Appendix at 79. Thus, Paragraph 3–19 expressly makes Gehrke responsible for acts and omissions of subcontractors, which is consonant with Gehrke's duty under Paragraph 6–04 to exercise precautions for the protection of anyone on the work site, including subcontractors' employees. Thus, the court does not read the omission of any other reference to Gehrke's responsibility for the safety of subcontractors' employees in Paragraph 3–19 to negate the responsibility for safety of subcontractors' employees imposed upon Gehrke by Paragraph 6–04.

Consequently, the circumstance described in *Eischeid* is precisely the circumstance that, as a matter of law, obtains here: Pursuant to Paragraph 6–04, Gehrke had, indeed, assumed a duty under its contract with the City for the safety of workmen, including subcontractors' employees, and that responsibility cannot be delegated to National Tank, or any other subcontractor. *Eischeid,* 217 F.R.D. at 464 (citing *Farris,* 354 N.W.2d at 255). Subcontractors' employees were, as a matter of law, persons for whose benefit Paragraph 6–04 of the general contract was made, because they are "persons" within the meaning of that paragraph. *Id.* (again citing *Farris,* 354 N.W.2d at 255). Thus, Gehrke was subject to a nondelegable "contractual" duty to subcontractors' employees to take reasonable precautions to prevent injury to them.

Gehrke nevertheless argues that the duty to protect work place safety was expressly delegated to National Tank pursuant to Paragraph 3–19 of the general contract. However, Gehrke's reliance on this assertion demonstrates Gehrke's misunderstanding of the difference between delegable performance and a nondelegable

duty to provide a reasonably safe place to work. As this court explained in *Eischeid,* "when a '[general contractor] assume[s] a duty under its contract with [the owner] for the safety of the workmen ... this responsibility cannot be delegated even though [the general contractor] had employed an independent contractor to do the actual work.'" *See Eischeid,* 217 F.R.D. at 463–64 (quoting *Farris,* 354 N.W.2d at 254–55, in turn quoting *Giarratano,* 259 Iowa at 1305, 147 N.W.2d at 832). Gehrke may have delegated to National Tank performance of precautions for a safe work place for subcontractors' employees, but Gehrke could not delegate its ultimate responsibility under its contract with the City to exercise at all times precautions for the protection of anyone on the work site, including subcontractors' employees. *See* Paragraph 6–04 of General Contract (National Tank Corporation's Appendix (In *Wegener*) In Support Of National Tank Corporation's Resistance To Gehrke, Inc.'s Second Motion For Partial Summary Judgment, 81; National Tank's Appendix (In *Cochran*) In Support Of National Tank Corporation's Resistance To Gehrke, Inc.'s Second Motion For Partial Summary Judgment, 81).

Because the court concludes that, contrary to Gehrke's contentions, Gehrke was under a non-delegable contractual duty to protect the safety of subcontractors' employees, the court finds it unnecessary to consider whether Gehrke was also subject to such a non-delegable duty under the "peculiarly risky or inherently dangerous" exception. The court also concludes that, in light of the analysis above, Gehrke's motion for partial summary judgment on the "no duty" issue must be denied.

### III. CONCLUSION

Upon the foregoing, reiterating the court's conclusion in *Cochran II,* 293 F.Supp.2d at 1002–03, Gehrke's indemnity agreement with National Tank is valid, enforceable, and applicable to the claims in the *Wegener* case. However, Gehrke was, itself, subject to a non-delegable duty under its general contract with the City to protect the safety of subcontractors' employees.

THEREFORE,

1. Gehrke's December 24, 2003, Motion for Partial Summary Judgment (docket no. 40) in the *Wegener* case is **granted** as follows:

a. The indemnity provision of the Subcontract Agreement between Gehrke and National Tank is valid and enforceable, even to the extent that it imposes upon National Tank a duty to indemnify Gehrke for Gehrke's own negligence, because the indemnity provision clearly and unequivocally expresses that intent.

b. The indemnity provision expressly provides for National Tank to indemnify Gehrke for negligent acts causing damage by National Tank *or* Eagle Grove— as an entity employed directly or indirectly by National Tank, *i.e.,* whether or not National Tank "directed" the work by Eagle Grove—*or* Gehrke.

c. National Tank must indemnify Gehrke for negligence of Gehrke *or* National Tank *or* Eagle Grove in carrying out the provisions of the general contract and of the Gehrke–National Tank Subcontract, as well as for Gehrke's legal fees in defending this action, and any disbursements paid or incurred by Gehrke to enforce the indemnity provision, including the costs and fees attributable to the present motion for partial summary judgment, *if* a jury determines that National Tank *or* Eagle Grove *or* Gehrke was negligent and that such negligence was a proximate cause of the Wegener plaintiffs' damage.

d. Notwithstanding the foregoing, the ultimate question of whether or not Gehrke is entitled to indemnity from National Tank must await jury findings of negligence and proximate cause and the court's application of the indemnity provision, as interpreted and construed in *Cochran II*, 293 F.Supp.2d at 1002–[0]3, to those findings.

2. Gehrke's January 12, 2004, Motion For Partial Summary Judgment in each case (*Cochran* docket no. 61; *Wegener* docket no. 44), seeking summary judgment to the effect that Gehrke did not owe a duty to protect the subcontractors' employees from injury on the New Providence job site, is **denied in each case.** Instead, the court concludes that, as a matter of law, Gehrke was under a non-delegable contractual duty, pursuant to Gehrke's general contract with the City, to protect the safety of subcontractors' employees.

**IT IS SO ORDERED.**